STURRUS v DEPARTMENT OF TREASURY

Docket No. 295403. Submitted February 1, 2011, at Lansing. Decided
    February 8, 2011. Approved for publication May 19, 2011, at 9:00
    a.m. Leave to appeal denied, 491 Mich 884.

    Plaintiffs, David W. and Nancy J. Sturrus, loaned more than $4
    million to Pupler Distributing Company between 1998 and 2002
    and, in return, received interest payments of $4,346,680. Plaintiffs
    reported and paid federal and state taxes on the interest payments
    for the years 1998 through 2002. Plaintiffs discovered in 2002 that
    Pupler was a Ponzi scheme and their interest payments stopped,
    with Pupler owing plaintiffs $5,108,500 in outstanding loans. As a
    result, plaintiffs claimed a theft-loss deduction of $5,108,500 for
    their lost investment on their 2002 federal tax return, pursuant to
    26 USC 165, and reduced their federal tax liability accordingly.
    Because the theft-loss deduction was taken after the determina-
    tion of adjusted gross income, the deduction had no effect on
    plaintiffs' Michigan income tax liability, which is based on the
    federal definitions of adjusted gross income. Also in 2002, an
    involuntary petition was filed in the United States Bankruptcy
    Court against Pupler. The bankruptcy trustee demanded that
    plaintiffs return the $4,346,680 in interest payments they had
    received, plus a 10 percent premium on the interest earned.
    Plaintiffs and the trustee reached a settlement whereby plaintiffs
    offset the repayment of interest against their lost investment and
    plaintiffs submitted a check for $350,000, representing the differ-
    ence in the two figures. On the basis of this transaction, plaintiffs
    reported a theft-loss recovery of $4,200,160 (the estimated total
    amount of their recovered lost investment) on their 2004 federal
    income tax return. The theft-loss recovery was included in the
    calculation of their adjusted gross income. Plaintiffs then deducted
    the amount of the theft-loss recovery from the adjusted gross
    income of their 2004 Michigan income tax return. Plaintiffs based
    this action on the federal tax-benefit rule, 26 USC 111(a), which
    provides that "[g]ross income does not include income attributed
    to the recovery during the taxable year of any amount deducted in
    any prior taxable year to the extent such amount did not reduce
    the amount of tax imposed by this chapter." Defendant, the
    Department of Treasury, audited plaintiffs' 2004 Michigan income

tax return and found a deficiency on the basis that the tax-benefit rule did not apply and, therefore, the theft-loss recovery deduction was improper. Plaintiffs paid the assessed tax and interest, and brought an action in the Court of Claims, requesting an order that, in part, required defendant to apply the tax-benefit rule and issue a tax refund to plaintiffs. The court, Paula J. M. Manderfield, J., granted summary disposition in favor of plaintiffs, reversed defendant's decision and order of determination, and ordered defendant to issue a tax refund to plaintiffs. Defendant appealed.

The Court of Appeals *held*:

1. The bankruptcy trustee had legal authority to recover the interest payments from plaintiffs.

2. The Income Tax Act MCL 206.1 *et seq.*, provides in MCL 206.2 that any term used in the act shall have the same meaning as when used in comparable context in the laws of the United States relating to federal income taxes unless a different meaning is clearly required. It also provides that it is the intention of the act that the income subject to tax be the same as taxable income as defined in the Internal Revenue Code. The Income Tax Act, in MCL 206.30(1), defines "taxable income" as adjusted gross income as defined in the Internal Revenue Code, minus certain specified adjustments. The Internal Revenue Code, 26 USC 62; 26 USC 63, defines both "adjusted gross income" and "taxable income" as gross income minus allowable deductions. The Internal Revenue Code provides that the starting point in calculating adjusted gross income is gross income, 26 USC 62. The tax-benefit rule pertains directly to the calculation of gross income. Therefore, it follows that because the tax-benefit rule is one part of the calculus in determining a taxpayer's federal adjusted gross income, the Income Tax Act's own definition of taxable income necessarily permits plaintiffs to invoke the provisions of the tax-benefit rule if they are applicable to their circumstances. The Court of Claims correctly ruled that the Income Tax Act necessarily incorporates the federal tax-benefit rule.

3. In order for an amount to be excluded from gross income under the tax-benefit rule, it must have previously been claimable as a deduction. Here, plaintiffs' lost investment was not previously deducted on any prior Michigan income tax return. By its very terms, the tax-benefit rule does not permit the deduction plaintiffs sought. The Income Tax Act does not provide for a theft-loss deduction because the theft-loss deduction is not included in the act's definition of adjusted gross income. The Court of Claims erred by ruling that the tax-benefit rule was applicable in this case. Plaintiffs were not entitled to deduct their theft-loss recovery from their 2004 Michigan tax return.

4. The Income Tax Act's recognition of the tax-benefit rule does not render MCL 206.30(1)(s) surplusage or nugatory or create an ambiguity in the law.

Reversed.

TAXATION — INCOME TAX ACT — TAXABLE INCOME — FEDERAL TAX-BENEFIT RULE.

The definition of taxable income in the Income Tax Act recognizes and necessarily permits taxpayers to invoke the provisions of the federal tax-benefit rule, 26 USC 111(a), if they are applicable to their circumstances (MCL 206.30[1]).

*Varnum LLP* (by *Thomas J. Kenny* and *Marla Schwaller Carew*) for plaintiffs.

*Bill Schuette*, Attorney General, *B. Eric Restuccia*, Solicitor General, and *Heidi L. Johnson-Mehney*, Assistant Attorney General, for defendant.

Before: MURPHY, C.J., and WHITBECK and MURRAY, JJ.

PER CURIAM. In this dispute over the proper application of the tax-benefit rule, defendant, the Department of Treasury, appeals as of right the Court of Claims' order denying its motion for summary disposition, granting plaintiffs' motion for summary disposition, reversing the Department's decision and order of determination, and compelling the Department to refund plaintiffs $174,214, plus interest. We hold that although the Court of Claims correctly ruled that the Income Tax Act (ITA), MCL 206.1 *et seq.*, necessarily incorporates the federal tax-benefit rule, the rule was not applicable in this case. Therefore, we reverse the opinion and order of the Court of Claims.

## I. BACKGROUND

This case finds its genesis in plaintiffs' attempt to recover their lost investment in the Pupler Distributing

Company, an organization later discovered to be a Ponzi scheme.[1] Between 1998 and 2002, plaintiffs loaned over $4,000,000 to Pupler and, in return, received interest payments of $4,346,680. Plaintiffs reported and paid federal and state taxes on the interest payments for the years 1998 through 2002.

In late 2002, plaintiffs discovered that Pupler was a Ponzi scheme with no legitimate business purpose. Pupler's interest payments to plaintiffs ceased at that time, with Pupler owing plaintiffs $5,108,500 in outstanding loans. As a result, plaintiffs claimed a theft-loss deduction of $5,108,500 for this lost investment on their 2002 federal tax return pursuant to 26 USC 165, and reduced their federal tax liability accordingly. Notably, the theft-loss deduction is taken "below the line" (i.e., after the determination of adjusted gross income). Consequently, because Michigan tax liability is based on the federal definitions of adjusted gross income,[2] the deduction had no effect on plaintiffs' Michigan income tax liability.

On November 14, 2002, an involuntary petition was filed in the United States Bankruptcy Court against Pupler pursuant to chapter 7 of the bankruptcy code, 11 USC 701 *et seq*. The bankruptcy trustee subsequently demanded that plaintiffs return the $4,346,680 in interest payments they had received from Pupler, plus a 10 percent premium on the interest earned. Plaintiffs eventually entered into a settlement agreement with the bankruptcy trustee permitting them to offset the

---

[1] A "Ponzi" or "Ponzi scheme" is defined as "a swindle in which a quick return on an initial investment paid out of funds from new investors lures the victim into bigger risks." *Random House Webster's College Dictionary* (2d ed, 1997). It is named after Charles Ponzi, who was the organizer of such a scheme during 1919 and 1920. *Id.*

[2] See MCL 206.30.

repayment of interest against their lost investment in Pupler. However, because the amount of plaintiff's interest repayment plus the premium totaled more than the lost investment, plaintiffs submitted a check in the amount of $350,000, representing the difference in the two figures.

Based on this transaction, plaintiffs reported a theft-loss recovery of $4,200,160 (the estimated total amount of their recovered lost investment) on their 2004 federal income tax return.[3] Notably, a theft-loss recovery is added "above the line" and therefore is included in the calculation of a taxpayer's adjusted gross income. The report of the theft-loss recovery, therefore, had significant Michigan tax liability implications for plaintiffs because, as previously noted, the theft-loss deduction (for their lost principal investment) claimed by plaintiffs in 2002 was taken "below the line" and consequently provided plaintiffs no Michigan tax benefit. Thus, in order to avoid paying taxes twice on the same income, plaintiffs deducted the amount of the theft-loss recovery ($4,200,160) from the adjusted gross income of their 2004 Michigan income tax return. Plaintiffs based this action on the federal "tax benefit rule."[4] Under this adjustment, plaintiffs claimed a Michigan tax refund of $171,348, plus interest.

The Department subsequently audited plaintiffs' 2004 income tax return and issued a notice of intent to assess on the ground that the tax-benefit rule did not apply and,

---

[3] Plaintiffs also reported a claim-of-right deduction of $4,346,680 on their federal tax return to account for their interest repayment. When reduced by the theft-loss recovery, plaintiffs claimed a net deduction on their federal taxes of $146,520 for the bankruptcy transaction.

[4] The tax-benefit rule provides that "[g]ross income does not include income attributable to the recovery during the taxable year of any amount deducted in any prior taxable year to the extent such amount did not reduce the amount of tax imposed by this chapter." 26 USC 111(a).

therefore, the theft-loss recovery deduction was improper. Consequently, the Department denied plaintiffs' tax refund claim and found an income tax deficiency of $2,866, plus interest, for the 2004 tax year. At the request of plaintiffs, an informal conference with the Department was held on November 14, 2006. At the conclusion of the conference, the hearing referee recommended that the federal tax-benefit rule be incorporated into Michigan law and that the assessment be canceled. Two years later, however, the director of tax policy overruled that recommendation and affirmed the assessment.

Plaintiffs paid the assessed tax and interest before initiating suit in the Court of Claims on January 28, 2009. In their complaint, plaintiffs requested an order requiring the Department to apply the tax-benefit rule and claim-of-right doctrine and to issue a tax refund. The Department answered in due course, and plaintiffs filed their motion for summary disposition under MCR 2.116(C)(10) (no genuine issue of material fact).

According to plaintiffs, since the federal theft-loss deduction provided no Michigan income tax benefit, the theft-loss recovery was not includable in plaintiff's adjusted gross income under the tax-benefit rule because the ITA specifically incorporates definitions and deductions of the Internal Revenue Code. The Department responded that because plaintiffs failed to prove remission of their interest payment from Pupler to the trustee, who in any event did not have authority to require such a payment, and alternatively, because the ITA did not provide for the application of the tax-benefit rule to theft losses, the court should grant the Department summary disposition under MCR 2.116(I)(2) (opposing party entitled to judgment) and dismiss plaintiffs' complaint.

In a 10-page opinion and order, the Court of Claims held that the tax-benefit rule was applicable based on

an apparent ambiguity in the law. Specifically, the court explained:

> Based simply on the plain language of the Act itself, it appears that the tax benefit rule must be recognized in Michigan. After all, the Act adopts by reference the definitions and principles contained in federal law and the Internal Revenue Code, and the Internal Revenue Code, in turn, incorporates the tax benefit rule. Defendant, however, points to the fact that the Legislature in certain circumstances, explicitly provided in the Act for adjustments to one's taxable income to account for deductions that may be taken on one's federal taxes but not on one's Michigan income tax returns, such as state, city, and property tax refunds. Noting that the Legislature thus knew how to provide for such adjustments when it wanted to, but that it did not provide for such an adjustment based on Michigan's non-recognition of the Theft Loss Deduction, Defendant argues that clearly the Legislature did *not* intend to adopt the tax benefit rule in Michigan's Income Tax Act in such circumstances. This is an equally viable interpretation. [Emphasis in original.]

Noting that such an ambiguity must be construed in plaintiffs' favor, the court found that "the Michigan Income Tax Act itself provides for the recognition of the tax benefit principle." Additionally, the court rejected the Department's argument that plaintiffs failed to remit their interest repayment to the trustee since plaintiffs had offset their interest repayment by the amount of their lost investment. Accordingly, the court granted summary disposition to plaintiffs, reversed the Department's decision and order of determination, and canceled plaintiffs' December 26, 2008, final bill for taxes due. Plaintiffs were therefore entitled to a refund of $174,214, plus interest. The instant appeal ensued.

## II. ANALYSIS

On appeal, the Department reiterates its challenge to plaintiffs' eligibility for a tax refund. The Court reviews de

novo an appeal from an order granting a motion for summary disposition. *Dressel v Ameribank*, 468 Mich 557, 561; 664 NW2d 151 (2003). A motion for summary disposition pursuant to MCR 2.116(C)(10) should be granted when the moving party is entitled to judgment as a matter of law because there is no genuine issue of material fact. *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). A genuine issue of material fact exists when reasonable minds could differ after drawing reasonable inferences from the record. *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). In reviewing this issue, the Court must consider the pleadings, affidavits, depositions, admissions, and other documentary evidence and construe them in a light most favorable to the nonmoving party. *Corley v Detroit Bd of Ed*, 470 Mich 274, 278; 681 NW2d 342 (2004). Issues of statutory interpretation are also questions of law that we review de novo. *USAA Ins Co v Houston Gen Ins Co*, 220 Mich App 386, 389; 559 NW2d 98 (1996).

### A. PLAINTIFFS' PAYMENT TO THE TRUSTEE

Before reaching the merits of the applicability of the tax-benefit rule, we first address the Department's preliminary contention that plaintiffs are not entitled to a refund since they failed to remit to the bankruptcy trustee interest payments received from Pupler. The flaw of this argument is the failure to acknowledge that plaintiffs' actual repayment to the trustee of $350,000 was the difference between the Pupler interest payments and plaintiffs' lost investment. Further, as the lower court observed, the Department failed to submit any evidence calling into question the estimation of plaintiffs' accountant that plaintiffs recovered only $4,200,120 of their lost investment. An opposing party's allegations without documentary support are insufficient to create a genuine issue

of material fact. *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996).

Additionally, we reject the Department's claim that the bankruptcy trustee lacked the legal authority to recover the interest payments from plaintiffs. In making this argument, the Department asserts that the trustee was only entitled to recover interest payments made within 90 days of the filing of the bankruptcy petition since the trustee found that no fraudulent transfers were made to plaintiffs. See 11 USC 547. The record reveals no such finding by the trustee, however. Instead, the trustee determined that plaintiffs were without fraudulent transfer *liability* because they had no net "Ponzi Profits." In other words, the trustee's determination pertained to the effect of plaintiffs' offsetting their lost investment against the repayment of their interest payments as opposed to any fraudulent transfers per se.

And in any event, it is well established that in the absence of a defense under 11 USC 548(c) a bankruptcy trustee may recover the full amount paid to Ponzi scheme investors under 11 USC 548(a)(1)(A), because the question of intent to defraud is not debatable. See, e.g., *Fisher v Sellis (In re Lake States Commodities, Inc)*, 253 BR 866, 877-878 (ND Ill, 2000); *In re Taubman*, 160 BR 964, 983-984 (SD Ohio, 1993); *In re Agricultural Research & Technology Group, Inc*, 916 F2d 528, 536 (CA 9, 1990); *In re Baker & Getty Fin Servs, Inc*, 98 BR 300, 308 (ND Ohio, 1989). As the Department launches no attack on the trustee's right to recover under that latter section, its challenge to the trustee's legal authority must fail.

### B. THE TAX-BENEFIT RULE

We now turn to the central issue in this case: whether the tax-benefit rule permitted plaintiffs to deduct their theft-loss recovery in calculating their tax liability. This

inquiry requires interpretation and application of the ITA. Thus, we begin by examining the specific language of the ITA to give effect to the Legislature's intent. *Renny v Dep't of Transp*, 478 Mich 490, 495; 734 NW2d 518 (2007). Where the language is unambiguous, judicial construction is neither required nor permitted. *Id.*

### 1. DOES THE ITA RECOGNIZE THE TAX-BENEFIT RULE?

The ITA subjects the "taxable income" of every individual other than a corporation to a state income tax. MCL 206.51(1). Notably, the ITA expressly incorporates federal principles in calculating taxable income so that terms in the ITA have the same meaning as when used in a comparable context in federal law. MCL 206.2 provides, in relevant part:

> (2) Any term used in this act shall have the same meaning as when used in comparable context in the laws of the United States relating to federal income taxes unless a different meaning is clearly required. Any reference in this act to the internal revenue code shall include other provisions of the laws of the United States relating to federal income taxes.

> (3) It is the intention of this Act that the income subject to tax be the same as taxable income as defined and applicable to the subject taxpayer in the internal revenue code, except as otherwise provided in this act.

Both "adjusted gross income" and "taxable income" are defined in the Internal Revenue Code (IRC) as gross income minus allowable deductions. 26 USC 62; 26 USC 63. The ITA, in turn, defines "taxable income" as "adjusted gross income as defined in the internal revenue code" minus certain specified adjustments. MCL 206.30(1).

The federal provision under which plaintiffs seek to deduct their theft-loss recovery is the tax-benefit rule.

As noted earlier, that rule provides that "[g]ross income does not include income attributable to the recovery during the taxable year of any amount deducted in any prior taxable year to the extent such amount did not reduce the amount of tax imposed by this chapter." 26 USC 111(a).

Instructive in applying the tax-benefit rule are the cases of *Preston v Dep't of Treasury*, 190 Mich App 491; 476 NW2d 455 (1991), and *Cook v Dep't of Treasury*, 229 Mich App 653; 583 NW2d 696 (1998). In *Preston*, the Court looked to the Legislature's statement of intent in MCL 206.2(3) and concluded that Michigan income tax taxpayers should receive a deduction for a net operating loss (NOL) even though the ITA did not expressly provide for such a deduction.[5] The Court explained that "[b]ecause the Internal Revenue Code defines adjusted gross income to include a deduction for an NOL, it, therefore, follows that the Michigan Income Tax Act allows an NOL deduction . . . ." *Preston*, 190 Mich App at 495.

*Cook* followed the reasoning of *Preston*, but concluded that the taxpayers in that case were not entitled to a deduction. At issue in *Cook* was whether oil and gas expenses are deductible even though oil and gas proceeds are exempt from tax under the ITA. *Cook*, 229 Mich App at 660. Relying on *Preston*, the Court determined that MCL 206.2(3) requires that a Michigan taxpayer's taxable income be "calculated in the same manner as it would be under the federal IRC, in the absence of an express provision of the Michigan ITA requiring a different result." *Cook*, 229 Mich App at 660. Applying this rationale, the Court held that even though the IRC permitted deductions for oil and gas

---

[5] The ITA was subsequently amended to provide for such a deduction. MCL 206.30(1)(o) and (p).

expenses, a deduction for these expenses was not proper under the Michigan ITA because the applicable accounting rule in the IRC disallowed deductions for income wholly exempt from taxes imposed by the IRC. *Id.* at 658-660.

From these cases, it is clear that taxable income in Michigan is to be *calculated* using the definitions in the IRC. Indeed, this is precisely what the plain language of MCL 206.2(3) mandates. This is, of course, different than saying taxable income in a Michigan tax return is *identical* to taxable income in a federal tax return.

To determine whether the ITA recognizes the federal tax-benefit rule, then, we must turn to the relevant definitions. Regarding taxable income, the ITA directs that we look to the IRC's definition of adjusted gross income. MCL 206.30(1). That definition provides that the starting point in calculating adjusted gross income is gross income. 26 USC 62. This definition is key because the tax-benefit rule pertains directly to the calculation of gross income. 26 USC 111(a); *Allstate Ins Co v United States*, 936 F2d 1271, 1275 (CA Fed, 1991). Therefore, it follows that since the tax-benefit rule is one part of the calculus in determining a taxpayer's federal adjusted gross income, the ITA's own definition of taxable income necessarily permits plaintiffs to invoke the provisions of the tax-benefit rule if they are applicable to their circumstances.

### 2. DOES THE TAX-BENEFIT RULE APPLY HERE?

As previously noted, the plain language of the tax-benefit rule permits a taxpayer to exclude from gross income any income that is recovered during the taxable year that was previously deducted in a prior taxable year as long as that previous deduction did not reduce the taxpayer's tax liability under the IRC. 26 USC

111(a). Here, plaintiffs seek to deduct their theft-loss recovery (i.e., the amount of their investment in Pupler recovered in bankruptcy) on their Michigan tax return. The problem is that the lost investment was not previously deducted on any prior Michigan tax return. And "in order for an amount to be excluded from gross income [under the tax-benefit rule], it must have previously been claimable as a deduction." *John Hancock Fin Servs, Inc v United States*, 378 F3d 1302, 1306 (CA Fed, 2004). Thus, by its very terms, the tax-benefit rule does not permit the deduction plaintiffs now seek.

Plaintiffs point out that because they previously claimed a theft-loss deduction on their 2002 federal tax return, the tax-benefit rule is applicable in calculating their 2004 Michigan tax liability because they received no Michigan tax benefit for the deduction. This argument, however, ignores that the theft-loss deduction in 2002 was taken *only* in calculating plaintiffs' federal tax return and reducing their 2002 federal tax liability for that year. Indeed, it is because the theft-loss deduction did result in a reduced tax that plaintiffs could not invoke the tax-benefit rule in calculating their 2004 federal tax return. For somewhat similar reasons, because the ITA does not provide for a theft-loss deduction, the tax-benefit rule does not apply by its very terms.[6] Consequently, plaintiffs' attempt to transpose their 2002 federal theft-loss deduction to their 2004 Michigan tax return is improper because it is not specific figures from a federal tax return but rather the IRC's calculations that the ITA incorporates to determine income subject to tax.

---

[6] Michigan law does not provide for a theft-loss deduction. This is so because the theft-loss deduction is taken below the line and consequently is not included in the ITA's definition of adjusted gross income. Neither party disputes this point.

Finally, we need to address the Department's argument that the ITA's implicit recognition of the federal tax-benefit rule renders other provisions of the ITA, in particular MCL 206.30(1)(s), surplusage or nugatory. MCL 206.30(1)(s) permits a deduction for state and city income tax and property tax refunds to the extent that they were included as adjusted gross income on the federal return. According to the Department, this is an application of the tax-benefit rule since a Michigan taxpayer receives no Michigan tax benefit for his federal deductions of these local taxes made in the prior year's federal tax return.

The deduction permitted in MCL 206.30(1)(s), however, would be an exception to the rule enunciated in the analysis above since it would permit a *federal deduction* to trigger the tax-benefit rule to a *Michigan tax return*. Notwithstanding, in this respect the benefit of MCL 206.30(1)(s) is not an application of the tax-benefit rule as implicitly recognized by MCL 206.2, since the tax-benefit rule recognized by MCL 206.2 looks to previous deductions *on a Michigan tax return* in calculating income subject to *state tax*. Thus, MCL 206.2's recognition of the tax-benefit rule does not render MCL 206.30(1)(s) surplusage or nugatory as the Department claims, nor does it create an ambiguity in the law as the Court of Claims ruled.

Nevertheless, the fact that the ITA specifically permits a taxpayer to use a deduction from federal tax returns in calculating Michigan adjusted gross income in certain circumstances (i.e., state and city taxes) and not in others (i.e., the theft-loss deduction) strongly implies that the Legislature did not intend to permit application of the tax-benefit rule to the situation at hand. See *American Federation of State, Co & Muni Employees v Detroit*, 267 Mich App 255, 260; 704 NW2d

712 (2005) ("Michigan recognizes the maxim '*expressio unius est exclusio alterius*; that the express mention in a statute of one thing implies the exclusion of other similar things.' "). In short, the tax-benefit rule is inapplicable in this case.

### III. CONCLUSION

In view of the foregoing analysis, we hold that although the ITA necessarily incorporates the federal tax-benefit rule, the rule was not applicable in this case. Plaintiffs were not entitled to deduct their theft-loss recovery from their 2004 Michigan tax return. We are aware that because of our ruling today, plaintiffs will receive no Michigan tax benefit for their losses in a Ponzi scheme and, in fact, must pay additional taxes because of their theft-loss recovery. The proper forum to address this problem, however, is the Legislature and not this Court. *Casco Twp v Secretary of State*, 472 Mich 566, 603; 701 NW2d 102 (2005) (opinion by YOUNG, J.).

The opinion and order of the Court of Claims is hereby reversed.

No costs, a public question being involved.

MURPHY, C.J., and WHITBECK and MURRAY, JJ., concurred.