*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MICHIGAN BELL TELEPHONE COMPANY,

FOR PUBLICATION
August 22, 2024
9:10 a.m.

Plaintiff-Appellant,

v

No. 365615
Court of Claims
LC No. 21-000148-MT

DEPARTMENT OF TREASURY,

Defendant-Appellee.

Before: MALDONADO, P.J., and M. J. KELLY and RICK, JJ.

RICK, J.

Plaintiff appeals as of right an order of the Court of Claims denying its motion for summary disposition under MCR 2.116(C)(10) (no genuine issue of material fact), and granting the competing (C)(10) motion filed by defendant. We affirm.

## I. FACTUAL BACKGROUND

This case concerns the proper interpretation and application of several Michigan corporate tax regimes. These tax statutes include the Income Tax Act of 1967 (ITA), MCL 206.1 *et seq*., which governed corporate tax until 1975, see 1967 PA 281, the Single Business Tax Act (SBTA, sometimes referred to as the SBT), MCL 208.1 *et seq*., which was in effect from 1976 through 2007, and the Michigan Business Tax Act (MBTA, sometimes referred to as the MBT), MCL 208.1101 *et seq*. The MBTA was in effect for the 2008 to 2011 tax years.[1] Finally, the case also concerns the corporate income tax act (CITA, sometimes referred to as the CIT), MCL 206.601 *et seq*. The CITA took effect in the 2012 tax year. It is the most recent corporate tax regime applicable to this case.

---

[1] Some aspects of the MBTA continue to apply in situations not relevant to this case. For purposes of this case, the MBTA applied from only 2008 to 2011.

-1-

The pertinent underlying facts of this matter are undisputed. The Court of Claims' opinion provided the following overview:

> Plaintiff is a telecommunications service provider. Plaintiff purchased telecommunications machines and equipment during the years that the SBT was in effect, and later sold the assets during the years that the MBT and CIT were in effect. During the SBT years, taxpayers could not take depreciation deductions for capital assets on their SBT returns, although they could do so for purposes of their federal taxes. So taxpayers were required to "add back" the depreciation into their tax base for purposes of state taxes . . . .

Notably, the SBTA tax-return form allowed the taxpayer enter a single figure for "Business income." Beneath this figure are "ADDITIONS – to the extent deducted in arriving at business income." The first addition has the taxpayer enter a figure for "Depreciation and other write-off of tangible assets." The Court of Claims continued:

> Plaintiff sold certain assets during the MBT and CIT years, and adjusted its federal taxable income on its amended state-tax returns to "add back" the depreciation for those assets. The result was that the reported value of the assets was higher, and plaintiff's taxable gain on the sale was lower . . . .
>
> In 2012, defendant audited plaintiff's MBT returns for tax years 2008 to 2010. Defendant later expanded the audit to include plaintiff's 2011 tax return. In an audit report, defendant's auditor concluded that "the Department continues to maintain that there is no ability in the statute to go back and recalculate the basis of an asset; only the bonus depreciation taken in that year may be added back." After an informal conference, which also included tax years 2012 and 2013, the referee issued an informal conference recommendation upholding defendant's intents to assess tax for the relevant tax years. The referee concluded that plaintiff lacked support for its position that it could increase the tax basis for depreciation deductions allowed under federal law. Defendant's Hearings Division issued Decisions and Orders adopting the referee's recommendation, and then issued final tax assessments.
>
> Plaintiff sued defendant in [the Court of Claims], raising three claims relating to whether plaintiff could adjust its tax base to add back the federal depreciation deductions. Following discovery, both parties moved for summary disposition under MCR 2.116(C)(10).

In February 2023, the Court of Claims granted defendant's motion for summary disposition, and denied plaintiff's motion. The court also rejected plaintiff's reliance on the tax-benefit rule, stating that it was a federal rule, and that plaintiff cited "no provision of the MBT, the CIT, or any caselaw" to support the argument "that a similar rule applies in Michigan[.]" It added that "the rule would only apply if plaintiff had deducted the depreciation on its state-tax returns—which it did not do." The court conceded "that defendant has been silent on [how taxpayers should handle such a depreciation issue] and has not provided any guidance," and "that the change in tax regimes had led to what may be considered an unfair outcome to certain taxpayers." But even so,

the court observed that the Legislature had moved to a new tax system, and refused to read language into the tax statutes that was not there. Plaintiff now appeals to this Court.

## II. ANALYSIS

### A. STANDARD OF REVIEW

"This Court reviews de novo a trial court's decision on a motion for summary disposition." *Allen v Bloomfield Hills Sch Dist*, 281 Mich App 49, 52; 760 NW2d 811 (2008). "A motion under Subrule (C)(10) tests the factual support for a party's cause of action." *Cetera v Mileto*, 342 Mich App 441, 447; 995 NW2d 838 (2022). Under MCR 2.116(C)(10), summary disposition is appropriate when, "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." When reviewing such a motion, the court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party. *Johnson v VanderKooi*, 502 Mich 751, 761; 918 NW2d 785 (2018). The court should consider the record evidence itself as well as all reasonable inferences drawn from it. *Baker v Arbor Drugs, Inc*, 215 Mich App 198, 202; 544 NW2d 727 (1996).

As noted, this case also concerns the interpretation of several of Michigan's statutory tax regimes. "The interpretation of statutes . . . is also a question of law subject to de novo review[.]" *Estes v Titus*, 481 Mich 573, 578-579; 751 NW2d 493 (2008). "When construing a statute, this Court's primary goal is to give effect to the intent of the Legislature." *Rowland v Washtenaw Co Rd Comm*, 477 Mich 197, 202; 731 NW2d 41 (2007). A term in a statute should first be given the meaning "readily discernable from reading the statute itself," if such a meaning is evident. See *Auto-Owners Ins Co v Dep't of Treasury*, 313 Mich App 56, 70 n 2; 880 NW2d 337 (2015). "If the language is clear and unambiguous, judicial construction is neither required nor permitted, and courts must apply the statute as written." *Yopek v Brighton Airport Ass'n, Inc*, 343 Mich App 415, 424; 997 NW2d 481 (2022) (quotation marks and citation omitted).

### B. MICHIGAN AND FEDERAL TAX CALCULATIONS

Plaintiff first argues that the Court of Claims miscalculated plaintiff's corporate tax base. We disagree.

"[T]he authority to impose a tax must be expressly authorized by law; it will not be inferred. Moreover, ambiguities in the language of a tax statute are to be resolved in favor of the taxpayer." *Mich Bell Tel Co v Dep't of Treasury*, 445 Mich 470, 477; 518 NW2d 808 (1994). "The scope of tax laws may not be extended by implication or forced construction. Such laws may be made plain, and the language thereof, if dubious, is not resolved against the taxpayer." *In re Dodge Bros*, 241 Mich 665, 669; 217 NW 777 (1928). However, "[t]axation is the rule, and exemptions are the exception." *Menard Inc v Dep't of Treasury*, 302 Mich App 467, 473; 838 NW2d 736 (2013). Tax deductions are "a matter of legislative grace, and a clear provision must be identified to allow for a particular deduction." *Id*. "The burden of proving a deduction is on the party seeking the deduction." *Id*.

While it was in effect, the SBTA defined its tax base as "business income . . . subject to the adjustments in this section." MCL 208.9(1).[2] One adjustment was to add, "to the extent deducted in arriving at federal taxable income . . . [a] deduction for depreciation, amortization, or immediate or accelerated write-off related to the cost of tangible assets." MCL 208.9(4)(c). Under the SBTA, " '[b]usiness income' means federal taxable income." MCL 208.3(3). " 'Federal taxable income' means taxable income as defined in section 63 of the internal revenue code." MCL 208.5(3).

The MBTA levied "a business income tax on every taxpayer with business activity within this state . . . imposed on the business income tax base[.]" MCL 208.1201(1). "The business income tax base means a taxpayer's business income[.]" MCL 208.1201(2). Under the MBTA, " '[b]usiness income' means that part of federal taxable income derived from business activity." MCL 208.1105(2). " 'Federal taxable income' means taxable income as defined in section 63 of the internal revenue code, except that federal taxable income shall be calculated as if section 168(k) and section 199 of the internal revenue code were not in effect." MCL 208.1109(3).

The CITA "levie[s] and impose[s] a corporate income tax on . . . the corporate income tax base[,]" MCL 206.623(1), which means that the tax is levied on "a taxpayer's business income[.]" MCL 206.623(2). Under the CITA, " 'Business income' means federal taxable income." MCL 206.603(3). " 'Federal taxable income' means taxable income as defined in section 63 of the internal revenue code, except that federal taxable income shall be calculated as if section 168(k) and section 199 of the internal revenue code were not in effect." MCL 206.607(1).

Both the MBTA and CITA set forth the following provision regarding definitions:

> A term used in this act and not defined differently shall have the same meaning as when used in comparable context in the laws of the United States relating to federal income taxes in effect for the tax year unless a different meaning is clearly required. A reference in this act to the internal revenue code includes other provisions of the laws of the United States relating to federal income taxes. [MCL 208.1103; MCL 206.601.]

It is evident that the SBTA, MBTA, and CITA defined their tax bases in similar ways. The key area in which they differed, for the purpose of this case, was how they handled federal depreciation deductions. Unlike the MBTA or CITA, the SBTA calculated the tax base by taking federal taxable income and adding to it any deductions for depreciation that had been allowed at the federal level. MCL 208.9(4)(c). On the other hand, the MBTA and CITA did not require this adjustment, thus allowing depreciation deductions to lower Michigan tax liability in a way that the SBTA did not.

---

[2] All of the relevant Michigan and federal tax statutes have been repeatedly amended or repealed entirely. However, the language from each statute pertinent to this opinion did not change over time. In other words, quoting from the most recent version of each statute accurately displays the language in effect when the tax-relevant events in this case took place, even though a prior version of that statute controlled. To avoid confusion, the most recent version of the statutes will be cited.

The Internal Revenue Code (IRC) states that, but for specified exceptions, "the term 'taxable income' means gross income minus the deductions allowed by this chapter (other than the standard deduction)." 26 USC 63(a). "[G]ross income means all income from whatever source derived, including . . . [g]ains derived from dealings in property." 26 USC 61(a)(3). "The gain from the sale or other disposition of property shall be the excess of the amount realized therefrom over the adjusted basis provided in section 1011 for determining gain." 26 USC 1001(a). "The basis of property" is generally "the cost of such property," subject to several exceptions. 26 USC 1012(a). 26 USC 167(a) provides as follows:

> There shall be allowed as a depreciation deduction a reasonable allowance for the exhaustion, wear and tear (including a reasonable allowance for obsolescence)—

> (1) of property used in the trade or business, or

> (2) of property held for the production of income.

26 USC 1016(a) provides, in pertinent part, as follows:

> Proper adjustment in respect of the property shall in all cases be made—

> * * *

> (2) in respect of any period since February 28, 1913, for exhaustion, wear and tear, obsolescence, amortization, and depletion, to the extent of the amount—

> (A) allowed as deductions in computing taxable income under this subtitle or prior income tax laws, and

> (B) resulting (by reason of the deductions so allowed) in a reduction for any taxable year of the taxpayer's taxes under this subtitle (other than chapter 2, relating to tax on self-employment income), or prior income, war-profits, or excess-profits tax laws, but not less than the amount allowable under this subtitle or prior income tax laws . . . .

Plaintiff points to several cases as instructive for understanding how the ITA and SBTA have been interpreted and applied by this Court. The earliest of those cases is *Preston v Dep't of Treasury*, 190 Mich App 491, 493; 476 NW2d 455 (1991), in which this Court considered the ITA. There, the plaintiff had income from both Michigan and Texas. *Id*. at 493. He reported losses on his 1980 Michigan tax return, but no net operating loss (NOL) on his federal return, because his Texas income had offset the Michigan loss. *Id*. The trial court ruled that the ITA incorporated a NOL deduction with MCL 206.2(3), and this Court agreed. *Id*. at 494. This Court traced the Michigan definition of taxable income to the IRC's allowance for deductions, which included an NOL deduction. *Id*. at 495. A Michigan NOL deduction had also been added by amendment, which this Court ruled applied retroactively. *Id*. This Court additionally rejected the defendants' argument "that a taxpayer is not entitled to a Michigan NOL deduction when the taxpayer's federal income tax return does not reflect an NOL." *Id*. at 497. This Court explained:

The income attributable to another state should not be used to deny a taxpayer the right to carry forward an NOL deduction when the NOL is solely attributable to Michigan. Accordingly, plaintiff is entitled to a Michigan NOL deduction for losses solely attributable to Michigan business activities. Because an NOL attributable to Michigan business activities is subject to the allocation and apportionment provisions of the act, the taxpayer is not limited to the NOL deduction, if any, claimed on the taxpayer's federal income tax return. [*Id.* at 497-498.]

Two years later, in *Cook v Dep't of Treasury*, 229 Mich App 653, 655; 583 NW2d 696 (1998), this Court again applied the ITA. The *Cook* plaintiffs had been paying income taxes on oil and gas proceeds before it was determined that those proceeds were actually exempt from taxation as income. *Id*. The plaintiffs filed amended returns in which they attempted to exempt the proceeds from income, but still deduct the expenses associated with oil and gas, resulting in a NOL. *Cook*, 229 Mich App at 655. Treasury argued that the associated expenses should not be included if the proceeds were not included while calculating a NOL, with which this Court agreed. *Id*. at 657, 660. This Court stated that Treasury's interpretation was "aided greatly" by MCL 206.2(3). *Cook*, 229 Mich App at 659. This Court further stated that 26 USC 265(a)(1) disallowed "deductions allocable to income exempt from income taxation," and MCL 206.2(3) applied this part of the IRC to the ITA. *Cook*, 229 Mich App at 660, 660 n 3. This Court construed MCL 206.2(3) "to mean that we must treat a Michigan taxpayer the same way that taxpayer would be treated under the federal IRC." *Cook*, 229 Mich App at 661.

More than a decade later, in *Sturrus v Dep't of Treasury*, 292 Mich App 639, 641; 809 NW2d 208 (2011), this Court again applied the ITA. There, the plaintiffs claimed a theft-loss deduction of $5,108,500 on their 2002 federal tax return. *Id*. Michigan tax liability was based on federal adjusted gross income. *Id*. Because the theft-loss deduction was "taken 'below the line' (i.e., after the determination of adjusted gross income) . . . the deduction had no effect on [the] plaintiffs' Michigan income tax liability." *Id*. In 2004, the plaintiffs reported $4,220,160 as a theft-loss recovery on their federal tax return. *Id*. This item was above the line, which meant it was part of federal adjusted gross income and would greatly increase the plaintiffs' Michigan income tax liability. *Id*. To avoid the large increase, they deducted the $4,220,160 on their 2004 Michigan return, arguing that the tax-benefit rule supported this action. *Id*. The trial court agreed, and granted plaintiffs a refund. *Id*. at 645.

Under 26 USC 111(a), "[g]ross income does not include income attributable to the recovery during the taxable year of any amount deducted in any prior taxable year to the extent such amount did not reduce the amount of tax imposed by this chapter." This provision is referred to as the "tax-benefit rule." *Sturrus*, 292 Mich App at 648-649.[3] This Court first ruled that the ITA recognized the tax-benefit rule, which is contained in a federal provision. *Id*. at 648, 650. But "the ITA expressly incorporates federal principles in calculating taxable income." *Id*. This Court stated that "taxable income in Michigan is to be *calculated* using the definitions in the IRC," which is "different than saying taxable income in a Michigan tax return is *identical* to taxable income in

---

[3] This rule is the focus of plaintiff's argument in Section II(C), and a more detailed explanation and analysis is set forth *infra*.

a federal tax return." *Id*. at 650. This Court traced the definitions that the ITA set forth, eventually arriving at the IRC definition of "gross income." *Id*. The Court observed that "the tax-benefit rule pertains directly to the calculation of gross income." *Id*. This Court concluded "that since the tax-benefit rule is one part of the calculus in determining a taxpayer's federal adjusted gross income, the ITA's own definition of taxable income necessarily permits plaintiffs to invoke the provisions of the tax-benefit rule if they are applicable to their circumstances." *Id*.

Nevertheless, this Court ruled that the plaintiffs did not satisfy the requirements of the tax-benefit rule, noting that the rule required that the deduction was "previously deducted on any prior Michigan tax return." *Id*. at 651, 653. The plaintiffs' 2002 federal deduction did not count, both because it was federal and because it did reduce their tax burden. *Id*. That the plaintiffs could not previously claim the deduction in Michigan because the ITA did not allow such a deduction militated against application of the rule. *Id*. This Court also noted:

> [T]he fact that the ITA specifically permits a taxpayer to use a deduction from federal tax returns in calculating Michigan adjusted gross income in certain circumstances (i.e., state and city taxes) and not in others (i.e., the theft-loss deduction) strongly implies that the Legislature did not intend to permit application of the tax-benefit rule to the situation at hand. [*Id*. at 652.]

This Court ruled against the plaintiffs. *Id*. at 653. It concluded that, "because of our ruling today, plaintiffs will receive no Michigan tax benefit for their losses in a Ponzi scheme and, in fact, must pay additional taxes because of their theft-loss recovery," adding that "[t]he proper forum to address this problem, however, is the Legislature and not this Court." *Id*.

Plaintiff additionally challenges the Court of Claims' reliance on *Lear Corp v Dep't of Treasury*, 299 Mich App 533, 536; 831 NW2d 255 (2013), in which this Court applied the SBTA. The *Lear* plaintiff had previously incurred research and experimental (R&E) expenditures, and had been using "identical calculations to prepare its single business tax (SBT) and its federal tax returns." *Lear Corp*, 299 Mich App at 535. When the SBTA was repealed, the plaintiff attempted to amend its SBTA returns and deduct all of its R&E expenditures for the year that they were incurred, even though for federal purposes, it had consistently amortized the expenditures over a span of 10 years. *Id*. This amendment would have resulted in a substantial refund. *Id*. at 536. Treasury argued that the "plaintiff must report the same taxable income for both its SBT returns and its federal returns." *Id*. This Court agreed, and reasoned as follows:

> [P]laintiff made the choice to amortize its R&E expenditures on both its federal returns and its SBT returns. When it did this, plaintiff was not guaranteed that it would realize its full deduction under the SBTA. The SBTA required plaintiff to use its federal taxable income as a starting point to determine its tax base for its SBT returns. While the SBTA may have authorized or required adjustments to be made, the only adjustments that can be made are those that were authorized or required by the SBTA. Because the SBTA did not authorize the specific adjustments sought by plaintiff, plaintiff is not entitled to make that adjustment. [*Id*. at 539-540.]

This Court distinguished *Sturrus*, stating that the holding there had not allowed a plaintiff to "completely disregard its federal tax returns in calculating its tax base," as it characterized the plaintiff as attempting to do. *Id.* at 538. We also pointed out that the plaintiff was "undisputedly a C corporation," and declared "any discussion regarding the characterization of different tax entities as it relates to this issue . . . not applicable." *Id.*

Here, plaintiff's strongest argument is that the way it is being taxed is fundamentally unfair. But ultimately, our review of the relevant statutes and caselaw indicates that the plain language of the SBTA, MBTA, CITA, and IRC support defendant's position. The SBTA tax did not allow for the depreciation of business assets that was permitted for purposes of federal taxation. MCL 208.9(4)(c). Nor did it not purport to offer any offset to compensate taxpayers for this. In contrast, the MBTA and CITA contain no provisions requiring a depreciation add-back, and thus more closely align the state and federal tax bases. MCL 208.1105(2); MCL 206.607(1). But they also do not purport to make up for the SBTA's treatment of the depreciation of business assets by providing any special basis adjustment for the regular depreciation of assets that had existed under the SBTA regime. The MBTA and CITA define their tax base as "taxable income as defined in section 63 of the internal revenue code, except that federal taxable income shall be calculated as if section 168(k) and section 199 of the internal revenue code were not in effect." MCL 208.1105(2); MCL 206.607(1). This last clause is notable because the Legislature singled out two areas where it *did* intend for the Michigan tax base to differ from the usual IRC calculation. These two areas were bonus depreciation[4] on certain qualified property, and the domestic-product activity deduction.[5] 26 USC 168(k); 26 USC 199. The expression of these areas, and the omission of any discussion of different treatment for general depreciation, indicates that the Legislature intended general depreciation to be treated in the manner that the IRC treats it. "Michigan has recognized the principal of *expressio unius est exclusio alterius*—express mention in a statute of one thing implies the exclusion of other similar things." *Stowers v Wolodzko*, 386 Mich 119, 133; 191 NW2d 355 (1971). Here, the statute expressly mentioned two deductions it intended to treat differently from the federal figures, while remaining silent on general depreciation deductions.

The MBTA also included several transitional rules, designed to ease and clarify what was to be done in certain domains as the transition from the SBTA occurred. The latter had allowed a business to "[d]educt any available business loss." MCL 208.23b(h). The MBTA clarifies that under it, businesses may only "deduct any available business loss incurred after December 31, 2007." MCL 208.1201(5). The MBTA also provides a deduction "if the book-tax differences for the first fiscal period ending after July 12, 2007 result in a deferred liability for a person subject to tax under this act." MCL 208.1201(2)(i). There are no such transitional rules, in either the MBTA

---

[4] Bonus depreciation allows a preliminary round of basis reduction before the normal depreciation deductions follow. 26 USC 168(k)(1)(B). It is allowed for "qualified property," which is defined to include only assets of a kind that the parties agree are not at issue in this case. 26 USC 168(k)(2).

[5] Before being repealed in 2017, the domestic-product activity deduction allowed a deduction for "qualified production activities income." PL 114-113, §§ 305(a), 170(a); 129 Stat 3040, 3069. Again, the parties agree that no such activities are at issue in this case.

or CITA, that describe a particular way of assigning value to assets acquired during the SBTA years, including as depreciation comes to bear.

"[T]axable income as defined in section 63 of the internal revenue code" for the tax years at issue included a reduced asset basis, because at the federal level depreciation deductions had been going through and reducing the basis of the assets. MCL 208.1105(2); MCL 206.607(1). Plaintiff nevertheless argues that "taxable income as defined in section 63 of the internal revenue code" is merely an instruction to take the underlying Michigan figures and run them through the IRC processes. Plaintiff reasons that since the assets did not benefit from Michigan depreciation deductions under the SBTA, 26 USC 1016(a) did not adjust their basis. Conversely, defendant argues that the MBTA and CITA do not direct such an involved process, and instead merely instruct taxpayers to take their established federal taxable income figure and use that, subject to any alterations described in the MBTA or CITA. Plaintiff's reading would potentially allow the Michigan tax base figure that was carried over to differ significantly from federal taxable income, while defendant's reading would simply use the federal taxable income figure, apart from "section 168(k) and section 199 of the internal revenue code." MCL 208.1105(2); MCL 206.607(1).

This Court's analysis in *Preston*, 190 Mich App at 497-498, favors plaintiff's position that a Michigan return can differ in an important way from the federal return, even when that difference is based upon an IRC concept. *Cook*, 229 Mich App at 661, and *Lear*, 299 Mich App at 539-540, however, favor defendant's position that Michigan tax regimes that define themselves with reference to the IRC should generally not have such differences. Additionally, while the *Sturrus* Court stated that "taxable income in Michigan is to be calculated using the definitions in the IRC," it also ultimately ruled against the plaintiffs. *Sturrus*, 292 Mich App at 650. This was so even though the plaintiffs' "failure" resulted from their hands being tied by the ITA, and even though the plaintiffs had to pay additional taxes in an unfair way. See *id*. at 653. But as the *Sturrus* Court correctly stated, "[t]he proper forum to address this problem . . . is the Legislature," not the courts. *Id*.

The aforementioned cases dealt with the ITA or SBTA, and therefore do not provide perfect precedent when considering the MBTA and CITA. But plaintiff is correct that the ITA and SBTA defined their tax bases with reference to the IRC, in a way similar to the MBTA and CITA. MCL 208.5(3). However, the more easily distinguishable cases are *Sturrus* and *Preston*. *Sturrus*, 292 Mich App at 650, was focused on the tax-benefit rule. The first major question was whether that federal concept applied to Michigan taxes at all. In this case, there is no question that the concepts of basis and gain on sale are to be applied to Michigan taxes. Instead of arguing otherwise, plaintiff attempts to alter those numbers from the federal calculation, despite being directed to use "federal taxable income." MCL 208.1105(2); MCL 206.603(3). But where this Court ruled against the plaintiffs is much more analogous to the issue in this case. Just as in *Sturrus*, 292 Mich App at 653, plaintiff was prevented from using an IRC provision as it wished, because a limitation of the Michigan tax regime blocked it from completing the precondition. The ITA did not allow the *Sturrus* plaintiffs the chance to claim a theft-loss deduction, just as the SBTA did not allow plaintiff to claim depreciation deductions here. *Sturrus* likewise made clear that such unfair outcomes are properly matters of legislative concern, not opportunities for judicial contrivance. *Id*.

*Preston* is also easily distinguished. *Preston* dealt with the NOL deduction. *Preston*, 190 Mich App at 494. Deciding whether a NOL deduction was applicable to Michigan was very clear: in addition to the IRC definition, a Michigan NOL deduction also existed. *Id*. at 495. The key aspect at play was that income earned in a different state affected how the NOL operated in the federal and Michigan returns. *Id*. at 493. The plaintiff's Texas income was sufficient to entirely offset the Michigan loss. *Id*. The analogous effect in this case would be present if sales of assets in another state were creating a large federal gain on sales of assets, and that was why Michigan taxable income was increased. But that is not the situation. The MBTA and CITA, as currently constituted, direct taxpayers that once they are past any other MBTA and CITA provisions, and past the "section 168(k) and section 199" exceptions, they are to use the federal taxable income figure as defined by the IRC. MCL 208.1109(3); MCL 206.607(1).

Plaintiff characterizes the reasoning in *Lear*, 299 Mich App at 539-540, as mere dicta. Contrary to plaintiff's assertion, however, this Court's discussion of how adjustments must be "authorized or required" by the taxing regime was not dicta, but rather integral to the discussion of the key turning point of the case. Treasury's explicit position on appeal was that the "plaintiff must report the same taxable income for both its SBTA returns and its federal returns," *id.* at 536, a position it maintains in this appeal.

The uncomfortable result on which this issue lands was ultimately created by the SBTA. There, the Legislature clearly decided to not grant Michigan taxpayers depreciation deductions. MCL 208.9(4)(c). The Legislature could have balanced the situation by creating an avenue for relief in the MBTA or CITA, as it did with other aspects in those regimes, but it declined to do so. Plaintiff's reading of the federal taxable-income directive is strained. *Cook*, 229 Mich App at 661, and *Lear*, 299 Mich App at 539-540, support the opposite reading. For the foregoing reasons, the Court of Claims did not err by interpreting the MBTA and CITA as disallowing a reconfiguration of gains on sales of assets, on the bases of those assets.

## C. THE TAX-BENEFIT RULE

Plaintiff also argues that the Court of Claims erred by determining that the tax-benefit rule did not justify a reduction in plaintiff's tax base. We disagree.

As earlier noted, the MBTA and CITA define federal taxable income as "taxable income as defined in section 63 of the internal revenue code, except that federal taxable income shall be calculated as if section 168(k) and section 199 of the internal revenue code were not in effect." MCL 208.1109(3); MCL 206.607(1). In turn, 26 USC 63(a) defines taxable income as "gross income minus the deductions allowed by this chapter (other than the standard deduction)." "Gross income does not include income attributable to the recovery during the taxable year of any amount deducted in any prior taxable year to the extent such amount did not reduce the amount of tax imposed by this chapter." 26 USC 111(a).

26 CFR 1.111-1(a) provides, in pertinent part, as follows:

> Section 111 provides that income attributable to the recovery during any taxable year of bad debts, prior taxes, and delinquency amounts shall be excluded from gross income to the extent of the "recovery exclusion" with respect to such

items. The rule of exclusion so prescribed by statute applies equally with respect to all other losses, expenditures and accruals made the basis of deductions from gross income for prior taxable years, including war losses referred to in section 127 of the Internal Revenue Code of 1939, but not including deductions with respect to depreciation, depletion, amortization, or amortizable bond premiums. . . .

Again, as noted, "[t]axation is the rule, and exemptions are the exception." *Menard Inc*, 302 Mich App at 473. "[A] deduction presents a matter of legislative grace, and a clear provision must be identified to allow for a particular deduction." *Id*. "The burden of proving a deduction is on the party seeking the deduction." *Id*. "A deduction must be clearly expressed because the 'propriety of a deduction does not turn upon general equitable considerations, such as a demonstration of effective economic and practical equivalence.' " *Id*., quoting *Perry Drug Stores,* 229 Mich App at 461. Relevant to this appeal, "[d]ouble taxation occurs when a second tax is imposed on the same property, for the same purpose, and by the same sovereign during the same taxing period." *Ameritech Publishing, Inc v Dep't of Treasury*, 281 Mich App 132, 152-153; 761 NW2d 470 (2008).

"[T]he tax-benefit rule pertains directly to the calculation of gross income." *Sturrus*, 292 Mich App at 650. "Therefore, it follows that since the tax-benefit rule is one part of the calculus in determining a taxpayer's federal adjusted gross income, the ITA's own definition of taxable income necessarily permits plaintiffs to invoke the provisions of the tax-benefit rule if they are applicable to their circumstances." *Id*. However, " 'in order for an amount to be excluded from gross income [under the tax-benefit rule], it must have previously been claimable as a deduction.' " *Id*. at 651, quoting *John Hancock Fin Servs, Inc v United States*, 378 F3d 1302, 1306 (CA Fed, 2004) (clarification added by *Sturrus*).

In *Sturrus*, 292 Mich App at 651, this Court held that the tax-benefit rule did not apply because "the lost investment was not previously deducted on any prior Michigan tax return." There, the plaintiffs claimed a 2002 *federal* theft-loss deduction. *Id*. The ITA did not allow such a deduction, so the plaintiffs were not able to also claim a 2002 *Michigan* theft-loss deduction. *Id*. This Court held that the plaintiffs could not properly use the rule to reduce their 2004 federal taxes, because they had already received their federal tax benefit. *Id*. The plaintiffs likewise could not use the rule to lower their 2004 Michigan taxes, noting that "because the ITA does not provide for a theft-loss deduction, the tax-benefit rule does not apply by its very terms." *Id*.

In this case, the court rejected plaintiff's tax-benefit argument on two bases. First, it appears to have taken the position that the rule had only federal application, and did not apply to any Michigan tax regimes involved. Second, the court held that that, even assuming the rule did apply in Michigan, by its terms it would require a prior deduction on state-tax returns, which plaintiff had not established.

Plaintiff plausibly argues that the tax-benefit rule may be applied in Michigan to the extent that its tax laws explicitly incorporate federal tax provisions that implicate it. Again, both the MBTA and CITA reference the IRC definition of "taxable income." MCL 208.1109(3); MCL 206.607(1). The IRC definition includes "[g]ross income" as a primary component. 26 USC 63(a). And the tax-benefit rule deals with situations resulting in income not included in "[g]ross

income." 26 USC 111(a). But the court correctly observed that plaintiff was not able to cite any binding Michigan caselaw that applied the rule specifically to the MBTA or CITA.

In *Sturrus*, 292 Mich App at 650, however, this Court did apply it to the ITA, stating that "[r]egarding taxable income, the ITA directs that we look to the IRC's definition of adjusted gross income." *Id*. The MBTA and CITA include the same direction. Nothing in the MBTA or CITA seems to disallow application of the tax-benefit rule when its terms are met, and defendant cites no Michigan caselaw that specifically holds the rule may not be applied to the MBTA or CITA. Further, nothing in the Michigan statutes or caselaw indicates that the rule cannot be applied to taxation provisions connected to federal gross income.

Defendant points out that under 26 CFR 1.111-1(a), the tax-benefit rule is not to be applied to "deductions with respect to depreciation." Plaintiff argues that this is because the federal system requires taxpayers to take depreciation deductions, but neither of the IRC sections that plaintiff cites actually *requires* taxpayers to take such deductions. 26 USC 167(a) states that such a deduction "shall be allowed." 26 USC 1016(a) requires adjustment, but only to the extent that a deduction has reduced taxes. See 26 USC 1016(a)(2)(B). It does not state that taking such a deduction is necessary, and instead only states that *if* the deduction is taken, adjustment in basis is also needed. Plaintiff argues that because the regulation is focused on the federal system, it does not perfectly describe how the rule is applied to Michigan. But the downside of attempting to apply the rule only through references to the IRC is that the rule is then also constrained by how it is defined by federal statute and regulation. Plaintiff cannot reach the rule through references to the IRC, but then also change it to be more amenable to Michigan taxpayers in a way that contradicts the pertinent statutory language. In sum, the tax-benefit rule may be applied to the MBTA or CITA, but not to the items 26 CFR 1.111-1(a) excludes, including "deductions with respect to depreciation, depletion, amortization, or amortizable bond premiums."

The Court of Claims was likewise correct that even if the tax-benefit rule passes this hurdle, its terms, as described in 26 USC 111(a), must still be met. Specifically, it can only be used to exclude an "amount deducted in any prior taxable year." Plaintiff argues that it *did* make deductions during the SBTA years: in its Michigan calculations, it first used the federal taxable-income number that included depreciation deductions, and then later in the calculations it was required to add the deduction amounts back. MCL 208.9(4)(c). The SBTA return form used a single figure for "Business income," which had plaintiff's depreciation deductions baked in, while offering no rundown of its constituent parts. Later, under "Additions," plaintiff reported the amount of "Depreciation and other write-off of tangible assets . . . to the extent deducted in arriving at business income." Therefore, the amount that plaintiff had taken as a depreciation deduction for federal purposes that year was identified, but was cast as an addition for the SBT, not as a deduction. The analysis in *Sturrus*, 292 Mich App at 651, suggests that those amounts do not qualify as Michigan deductions. Just as the *Sturrus* plaintiffs had not previously been able to take a Michigan theft-loss deduction because the ITA did not allow it, plaintiff here was not able to take a Michigan depreciation deduction because the SBTA did not allow it. This Court held that the plaintiff's not having taken such a deduction, even though it was not due to an error on the plaintiffs' part, meant that the tax-benefit rule's terms had not been met. See *id*. Here, plaintiff has not fulfilled the rule's requirement that it previously deducted the amount in question on a Michigan return.

Plaintiff claims that the tax-benefit rule helps prevent double taxation in relation to deductions that did not ultimately reduce a taxpayer's tax burden to begin with. Conversely, defendant argues that the concept of being taxed twice does not apply to this situation at all. Defendant thus overstates the issue: with respect to the depreciation amounts on the assets during the SBTA years, plaintiff was technically taxed twice. But defendant is correct that this so-called "double taxation" does not meet the narrow definition of prohibited double taxation described in *Ameritech Publishing*, given that the second tax was not imposed "during the same taxing period." 281 Mich App at 152-153. The first instance of taxation occurred during the SBTA years, with the second instance not occurring until years later, when the pertinent assets were sold.

Ultimately, plaintiff's intuition that the rule exists to ensure fairness and prevent double taxation for certain situations is correct. But its terms and limitations must still be observed: it is not enough to have an analogous situation. The Legislature could enact a version of the tax-benefit rule designed to more seamlessly fit with the particulars of Michigan tax law, but without such a codification, taxpayers may invoke the rule only as it is defined in the pertinent federal statute and regulation. The tax-benefit rule does not apply to plaintiff's situation.

Affirmed.

/s/ Michelle M. Rick
/s/ Allie Greenleaf Maldonado
/s/ Michael J. Kelly