*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

REPUBLIC SERVICES OF MICHIGAN HOLDING CO., INC.,

      Plaintiff-Appellant,

v

DEPARTMENT OF TREASURY,

      Defendant-Appellee.

FOR PUBLICATION
August 22, 2024
9:05 a.m.

No. 366164
Court of Claims
LC No. 21-000178-MT

---

Before: MALDONADO, P.J., and M. J. KELLY and RICK, JJ.

RICK, J.

Plaintiff appeals as of right an order of the Court of Claims granting summary disposition under MCR 2.116(C)(10) (no genuine issue of material fact) in favor of defendant. We affirm.

## I. FACTUAL BACKGROUND

This matter concerns the proper interpretation and application of several Michigan corporate tax regimes. These include the Income Tax Act of 1967 (ITA), MCL 206.1 *et seq*., which governed corporate tax until 1975. See 1967 PA 281. Also at issue are the Single Business Tax Act (SBTA, sometimes referred to as the SBT), MCL 208.1 *et seq*., which was in effect from 1976 through 2007, and the Michigan Business Tax Act (MBTA, sometimes referred to as the MBT), MCL 208.1101 *et seq*. The MBTA was in effect for the 2008 to 2011 tax years.[1] The case also concerns the corporate income tax act (CITA, sometimes referred to as the CIT),

---

[1] Some aspects of the MBT continue to apply in situations not relevant to this case. For purposes of this case, the MBT applied from only 2008 to 2011.

MCL 206.601 *et seq*. The CITA took effect in the 2012 tax year. It is the most recent corporate taxing regime applicable to this case.[2]

The material facts of this case are not in dispute. Plaintiff is a Delaware corporation that specializes in waste collection and disposal. This case involves certain capital assets (the Property) that plaintiff acquired during the years that the SBTA was in effect but sold after the CITA took effect. The tax years at issue in this case are 2012 through 2018, in which plaintiff amended CITA returns. However, the primary tax years at issue are 2012 through 2015 because those were the years during which plaintiff sold the Property. In the proceedings below, plaintiff explained that in its original tax returns, it "inadvertently used its federal 'adjusted basis,' rather than its 'adjusted basis' computed to account for differences between federal and Michigan tax law while the asset was held, to compute its Michigan gain (or loss) on the disposition of the assets acquired during the SBTA regime." In other words, because plaintiff took the depreciation deduction for its federal tax returns, it needed to decrease its adjusted basis in the Property on those returns.

For plaintiff's original CITA returns, it initially followed the federal adjusted basis, which included the decreased adjusted basis. But in the first amended returns, plaintiff's complaint explained that it adjusted its "basis in the disposed assets for which a depreciation deduction was not permitted under Michigan law, and claimed a refund of taxes previously paid." Plaintiff's complaint further explained that these amended tax returns "reflected less gain, and an overpayment of tax." According to a referee who presided over an informal conference proceeding below,

> [Plaintiff] amended CIT returns to report a large amount in this area in each audit year from the originally reported zero. Further reviews and discussions with [Plaintiff] showed that the amended amounts were for the basis of disposed assets adjustments that were acquired under the [Single Business Tax ("SBT")]. [Plaintiff] claimed that the federal depreciation was not allowed under the SBT, and therefore, it should not reduce [Plaintiff's] basis in the disposed assets.
>
> [Plaintiff's] claim was denied in the audit as there were no provisions in the CIT Statute that allow to make such adjustments. The reported amounts were reduced to zero in the audit period.

The referee further explained:

> [Plaintiff]'s amended returns thus reported a lower federal taxable income (FTI) than what was reported on Petitioner's federal returns due to the asset basis adjustments, which therefore reduced its reported gain from the disposition of those assets. Petitioner's rationale for the basis adjustments was that the SBTA did not allow for adjustments to basis for depreciation. Petitioner tried to make that up under the CIT when the assets were disposed by increasing the basis with the

---

[2] For purposes of this appeal, the complex methods for determining this depreciation deduction is not at issue. What matters is that plaintiff took the federal depreciation deduction for the Property in its federal tax returns.

disallowed depreciation amounts. Petitioner's arguments for the position taken on the amended returns filed prior to the audit are articulated in its letter requesting informal conference, dated October 30, 2018.

As the Court of Claims explained, "[p]laintiff would benefit from using nondepreciated values as the starting point because the value of the assets would be higher, and thus, plaintiff's gain on the sale would be reduced (leading to a smaller tax liability)."

Defendant initially issued significant refunds to plaintiff for tax years 2012 through 2015. But beginning in 2017, defendant initiated an audit of plaintiff for tax years 2012 through 2015. In August 2018, defendant issued a formal notice of assessment for tax years 2012 through 2015 and determined that the previously issued refunds should be returned. In December 2018, defendant issued formal notice of assessment for tax year 2016. In January and March 2019, plaintiff filed a second set of amended CITA returns but only for tax years 2014 through 2016. In January 2019, defendant issued formal notice of assessment for tax year 2017 as a result of adjustments made by defendant to the 2016 and 2017 amended returns. Defendant ultimately determined that plaintiff owed taxes, interest, and penalties for years 2016 and 2017.

The aforementioned informal conference regarding the assessments took place in April 2019. The referee determined that "[plaintiff] has not demonstrated that the Department erred in disallowing the basis adjustments[.]" The referee explained:

> Petitioner here is essentially arguing that it should be allowed to take the depreciation allowances that it could not take to reduce the basis of the assets under a prior tax act and use that amount to determine the gain from those assets when they were disposed during the audit years under an entirely different tax act that undisputedly applies in this case. There is simply no provision under the CIT that allows Petitioner to calculate its FTI and, in turn, its CIT base for the audit years by recomputing the basis of its assets at the state level based on what it deems was a disadvantage under the former Michigan tax statutes, the SBT. As stated in the Department's Rejection of Settlement, "This theory is flawed because the CIT's definition of tax base starting with FTI does not also require or even allow recomputation of the asset basis at the state level. The CIT's adoption of FTI as defined in [Internal Revenue Code (IRC)] §63 does not mean that all provisions that go into a determination of FTI are likewise adopted into determining the CIT tax base." The remaining analysis in the Department's Rejection of Settlement is sound, and is therefore adopted and incorporated by reference as if fully set forth herein.

Despite this, the referee ultimately concluded that the notices of assessment had been canceled, which would dispose of the case on procedural grounds. While a "Decision and Order of Determination" was pending, defendant gave plaintiff notice of adjustments made to the refunds for tax years 2016 through 2018.

In June 2021, defendant's hearings division administrator rejected the referee's recommendation from the informal conference and upheld defendants "Intents to Assess" for all three sets of tax years. Specifically, the administrator rejected the referee's determinations

concerning the notices to assess, which are not implicated in this appeal, but upheld the referee's determinations about plaintiff's improperly adjusting its basis in the Property. Plaintiff subsequently brought the instant suit against defendant. In a five-count complaint, plaintiff claimed that the initial notices from defendant were deficient (Count 1); that defendant artificially inflated plaintiff's gains on the sale of the Property (Count 2); that defendant unlawfully taxed the Property (Count 3); that plaintiff was entitled to a penalty waiver (Count 4); and that the second set of notices sent after the initiation of this case were deficient (Count 5).

During the course of the proceedings, the parties filed competing motions for summary disposition under MCR 2.116(C)(10). The Court of Claims ultimately found in defendant's favor. Analyzing the CITA and MBTA, the court determined that "the starting point is the corporate income-tax base," which was defined as the federal taxable income, or FTI. The only exceptions to the FTI were bonus depreciation and domestic-production activity, and the latter was eventually repealed, leaving only bonus depreciation. The court determined that although the SBTA had "required taxpayers to add back federal depreciation deductions to their tax base after starting with their federal taxable income," the MBTA and CITA removed this requirement. The court rejected plaintiff's attempt to modify its tax base, reasoning:

> [T]he SBT did *not* require plaintiff to modify its tax basis in the assets. Rather, the adjustment for federal depreciation took place *after* the taxpayer started its tax-base calculation with its federal taxable income. Only through various additions and subtractions was the federal-tax base converted into the SBT base. Likewise, under both the MBT and the CIT, federal taxable income is still the starting point, and the only adjustments to federal taxable income are those expressly outlined in the statutes (e.g., bonus depreciation). Neither statute allows for a generalized asset depreciation "add back" from the SBT years.

The Court of Claims was also unpersuaded by an argument raised by plaintiff regarding the tax-benefit rule argument. The court acknowledged the federal rule, but observed:

> Plaintiff argues that a similar rule applies in Michigan, yet cites no provision of the CIT or any caselaw to support its position. And the rule would only apply if plaintiff had deducted the depreciation on its state returns—which it did not do. The tax-benefit rule, therefore, does not support plaintiff's position.

The court likewise denied a request by plaintiff for a penalty waiver. It observed that plaintiff failed to meet the requirement that the request for a waiver be made in writing. However, the court found that it need not decide whether plaintiff had satisfied this requirement because plaintiff had failed to show reasonable cause for failing to pay taxes. The court explained:

> Plaintiff does not rely on any of the illustrative examples in Rule 1013(8) and argues, instead, that its failure to pay the owed taxes was because of an honest difference in opinion on the interpretation of the CIT. The issue with plaintiff's argument is that, as discussed above, plaintiff has provided no legal basis for its interpretation of the CIT. Without a legal basis for its tax interpretation, plaintiff cannot show, by clear and convincing evidence, reasonable cause for failing to pay the taxes.

Plaintiff later moved for reconsideration. The court denied the motion for failure to show a palpable error by which the court or parties were misled. This appeal followed.

## II. ANALYSIS

### A. STANDARD OF REVIEW

"This Court reviews de novo a trial court's decision on a motion for summary disposition." *Allen v Bloomfield Hills Sch Dist*, 281 Mich App 49, 52; 760 NW2d 811 (2008). "A motion under Subrule (C)(10) tests the factual support for a party's cause of action." *Cetera v Mileto*, 342 Mich App 441, 447; 995 NW2d 838 (2022). Under MCR 2.116(C)(10), summary disposition is appropriate when, "[e]xcept as to the amount of damages, there is no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." When reviewing such a motion, the court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party. *Johnson v VanderKooi*, 502 Mich 751, 761; 918 NW2d 785 (2018). The court should consider the record evidence itself as well as all reasonable inferences drawn from it. *Baker v Arbor Drugs, Inc*, 215 Mich App 198, 202; 544 NW2d 727 (1996).

This case also concerns the interpretation of several of Michigan's statutory tax regimes. "The interpretation of statutes . . . is also a question of law subject to de novo review[.]" *Estes v Titus*, 481 Mich 573, 578-579; 751 NW2d 493 (2008). "When construing a statute, this Court's primary goal is to give effect to the intent of the Legislature." *Rowland v Washtenaw Co Rd Comm*, 477 Mich 197, 202; 731 NW2d 41 (2007). A term in a statute should first be given the meaning "readily discernable from reading the statute itself," if such a meaning is evident. See *Auto-Owners Ins Co v Dep't of Treasury*, 313 Mich App 56, 70 n 2; 880 NW2d 337 (2015). "If the language is clear and unambiguous, judicial construction is neither required nor permitted, and courts must apply the statute as written." *Yopek v Brighton Airport Ass'n, Inc*, 343 Mich App 415, 424; 997 NW2d 481 (2022) (quotation marks and citation omitted).

### B. DEPRECIATION AND THE TAX-BENEFIT RULE

Plaintiff argues that the Court of Claims erred in its determination that plaintiff's amended tax returns were not supported by any Michigan statutory scheme. We disagree. Furthermore, plaintiff argues that the tax-benefit rule applies to the CITA. While there may be some merit to that notion, we hold that the tax-benefit rule does not apply to the circumstances presented here.

As previously noted, Michigan's tax statutory scheme has changed over many decades. Our Supreme Court previously provided a useful overview of these changes. "In 1976, the Legislature replaced the corporate income tax with a single business tax," i.e., the SBTA, which "taxed business activity, not income, and operated as 'a form of value added tax.' " *Int'l Business Machines Corp v Dep't of Treasury*, 496 Mich 642, 649; 852 NW2d 865 (2014) (citation omitted). "[T]he Legislature expressly amended the ITA to the extent necessary to implement the SBTA and expressly repealed provisions of the ITA that would conflict with the SBTA." *Id*. "The SBTA remained in effect until 2008, when the Legislature enacted the BTA," *id*., i.e., the MBTA. "[T]he

Legislature expressly repealed the SBTA . . . ." *Id.* "However, the BTA was short-lived. Effective January 1, 2012, Michigan returned to a corporate income tax," *id.*, i.e., the CITA.[3]

Plaintiff's primary position is that Michigan's various tax schemes supported its decision to remove federal depreciation deductions from its FTI for the SBTA years. Under the CITA, "[t]he corporate income tax base means a taxpayer's business income subject to" various adjustments. MCL 206.623(2). These adjustments are contained in MCL 206.623(2)(a) to (h), but none of these subdivisions contain any reference to depreciation. Business income is defined to be FTI. FTI is in turn defined to be "taxable income as defined in section 63 of the internal revenue code, except that federal taxable income shall be calculated as if section 168(k) and section 199 of the internal revenue code were not in effect." MCL 206.607(1).

Similar to the CITA, the MBTA provided that "[t]he business income tax base means a taxpayer's business income subject to" various adjustments. MCL 208.1201(2). These adjustments were contained in MCL 208.1201(2)(a) to (j) and MCL 208.1201(5) to (7), but none of these provisions contain any reference to depreciation. Business income was generally defined to be "that part of federal taxable income derived from business activity." MCL 208.1105(2). FTI was in turn defined to be "taxable income as defined in section 63 of the internal revenue code, except that federal taxable income shall be calculated as if section 168(k) and section 199 of the internal revenue code were not in effect," MCL 208.1109(3), which is language identical with that of the CITA.

Additionally, the SBTA provided that a taxpayer's "tax base" was "business income, before apportionment or allocation as provided in chapter 3, even if zero or negative, subject to the adjustments in this section." MCL 208.9(1). Business income was defined to be "federal taxable income, except that for a person other than a corporation it means that part of federal taxable income derived from business activity." MCL 208.3(3) (emphasis added). FTI, in turn, was defined to be "taxable income as defined in section 63 of the internal revenue code." MCL 208.5(3). Accordingly, the SBTA, MBTA, and CITA each relied on Section 63 of the Internal Revenue Code, or IRC, to define FTI, i.e., business income, which meant that the starting point for a corporation's Michigan tax returns under each statutory scheme was, and is, FTI. FTI is determined under the IRC. There appears to be no dispute on this point by the parties.[4]

_____

[3] Although all of the relevant Michigan and federal tax statutes have been repeatedly amended or repealed entirely, the language from each statute pertinent to this opinion did not change over time. In other words, quoting from the most recent version of each statute accurately displays the language in effect when the tax-relevant events in this case took place, even though a prior version of that statute controlled. To avoid confusion, we note that the most recent version of the statutes will be cited.

[4] There are few pertinent differences between the SBTA versus the MBTA and CITA. One is that, when defining FTI, the SBTA did not contain any exceptions; it simply defined FTI to be taxable income as defined in § 63 of the IRC. In contrast, the MBTA and CITA defined FTI to be taxable income as defined in § 63 of the IRC but as if §§ 168(k) and 199 of the IRC were not in effect. The parties and Court of Claims described § 168(k) of the IRC as "bonus depreciation"

Section 63 of the IRC provides that "the term 'taxable income' means gross income minus the deductions allowed by this chapter (other than the standard deduction)." 26 USC 63(a). One of the allowed deductions for property is a deduction for depreciation. See 26 USC 167(a)(1) (providing that "[t]here shall be allowed as a depreciation deduction a reasonable allowance for the exhaustion, wear and tear (including a reasonable allowance for obsolescence)" for "property used in the trade or business" or "property held for the production of income"). The parties agree that such a deduction existed and that plaintiff took it in its federal tax returns.

Gross income is defined to be "all income from whatever source derived, including . . . [g]ains derived by dealings in property." 26 USC 61(a)(3). Section 1001 of the IRC confirms that gains from selling property are part of gross income. See 26 USC 1001(c). In general, any gain from such a sale is to be determined by "the excess of the amount realized therefrom over the adjusted basis provided in section 1011 for determining gain . . . ." 26 USC 1001(a). Further, "[t]he basis of property shall be the cost of such property" apart from several exceptions. 26 USC 1012(a). This basis in turn "shall in all cases be" adjusted for many listed items, 26 USC 1016(a), one of which is depreciation of the property due to "exhaustion, wear and tear, obsolescence, amortization, and depletion," 26 USC 1016(a)(2) and (2)(B). This adjustment means that "the cost or other basis of property shall be decreased for exhaustion, wear and tear, obsolescence, amortization, and depletion . . . ." 26 CFR 1.1016-3(a) (2014).

Plaintiff wants to use *nondepreciated* values for the sale of the Property during the CITA years in order to increase its adjusted basis in the assets and result in a lesser gain from the sale. There is no support for plaintiff's desires. Beginning with the SBTA, the FTI was the starting point, which was in turn calculated under the pertinent provisions of the IRC. This required plaintiff to calculate its FTI starting point by following the applicable provisions of the IRC, and this included the depreciation deduction provisions for the Property. It was not until *after* this starting point was reached, i.e., that the FTI was calculated, that the SBTA had an express provision requiring plaintiff to modify the FTI by adding back those federal depreciation deductions. Nothing within the SBTA itself allowed plaintiff to modify its adjusted basis in the Property when calculating its FTI starting point.

As the Court of Claims stated, plaintiff has identified no provision of the MBTA or CITA that "allows for a generalized asset depreciation 'add back' from the SBT years." Like the SBTA, the starting point under the CITA is FTI, which is in turn calculated under the pertinent provisions of the IRC. Accordingly, when plaintiff sold the Property during the CITA years, it was required to calculate its FTI starting point by following the applicable provisions of the IRC, and this included the depreciation deduction provisions for the Property. Unlike the SBTA, the CITA contains no express provision allowing plaintiff to add back or otherwise modify its federal

and § 199 of the IRC as a "domestic-production activity deduction." Section 199 of the IRC was repealed in 2017, see PL 115-97, § 13395(a), leaving only bonus deprecation as an exception. Another key difference is that the SBTA required taxpayers to add back any federal depreciation deductions to their tax base after starting with FTI. MCL 208.9(4)(c). The MBTA did not contain such a requirement, and the CITA does not contain one. The parties do not dispute these legal principles.

deductions. Instead, the CITA requires plaintiff to follow the IRC and add the federal depreciation deductions to the Property's adjusted basis. There is simply no provision allowing plaintiff to retroactively modify its adjusted basis in the Property from the SBTA years.

In other words, the CITA essentially taxes plaintiff as if it has taken depreciation deductions in the Property. Plaintiff argues that this is unfair because it did not do so when it acquired the Property in the SBTA years; however, regardless of how "unfair" it is, the statutory language indicates that it is what the Legislature intended when it decided to enact a new tax scheme. As the Court of Claims stated, although this change in tax schemes "has led to what may be considered an unfair outcome to certain taxpayers . . . . when the Legislature changed regimes, the Legislature deemed the new tax system inherently better." The Legislature certainly knew how to remove certain IRC adjustments to gross income from the FTI starting point, as evidenced in both the MBTA and CITA, which both removed bonus depreciation and the domestic-production-activity deduction from FTI. See MCL 208.1109(3); MCL 206.607(1). The Legislature chose to leave standard depreciation. Moreover, the Legislature chose not to provide any provision covering taxpayers like plaintiff, which was subject to the SBTA scheme. Plaintiff's position would impermissibly read in such provisions where none are present.

We also agree with the Court of Claims that the principles set forth in *Lear Corp v Dep't of Treasury*, 299 Mich App 533; 831 NW2d 255 (2013), provide support for defendant's position. In *Lear*, 299 Mich App at 536, this Court was presented with the novel question of "whether a C corporation can elect to amortize R&E expenditures over 10 years under § 59(e), while at the same time deducting the entire amount for the year in which it was incurred for purposes of the SBT." The plaintiff was a corporation that had incurred significant R&E expenditures that were deductible. *Id*. at 535. However, rather than deduct them on its federal tax returns, the plaintiff decided to amortize them over a 10-year period, which was an option available to it under § 59(e) of the IRC. *Id*. As this Court explained: "In other words, plaintiff deducted only a portion of the total amount in the years at issue in this case." *Id*.

The SBTA did not have a provision equivalent to § 59(e) of the IRC, and consequently the "plaintiff used identical calculations to prepare its single business tax (SBT) and its federal tax returns for the years at issue." *Id*. In other words, for its SBT returns, the plaintiff followed its federal tax returns and amortized the R&E expenditures. However, once "the SBTA was repealed, plaintiff sought to go back and amend its SBT returns, deducting the entire $205,000,000 in the year in which the R&E expenditures were incurred." *Id*. The plaintiff sought a refund, which the defendant denied. *Id*.

This Court held that the plaintiff's actions were improper and that the SBTA had required plaintiff to use the amortized amount as its starting point. *Id*. at 537. In reaching this conclusion, this Court reasoned:

The SBTA contained no ambiguities regarding whether a C corporation was required to report its R&E expenditures in the same manner as they were on its federal returns. Rather, it was silent on this issue. The SBTA unambiguously stated that "[tax base] means business income" and "[business income] means federal taxable income." Because the SBTA used clear and unambiguous language, plaintiff's tax base must reflect its federal taxable income, including its election to

amortize its R&E expenditures under § 59(e). Therefore, plaintiff should have used the amortized amount as a starting point to determine its SBT tax base for each year in issue. [Id. (alterations in original).]

This Court later reiterated:

[P]laintiff made the choice to amortize its R&E expenditures on both its federal returns and its SBT returns. When it did this, plaintiff was not guaranteed that it would realize its full deduction under the SBTA. The SBTA required plaintiff to use its federal taxable income as a starting point to determine its tax base for its SBT returns. While the SBTA may have authorized or required adjustments to be made, the only adjustments that can be made are those that were authorized or required by the SBTA. Because the SBTA did not authorize the specific adjustments sought by plaintiff, plaintiff is not entitled to make that adjustment. [Id. at 539-540.]

Furthermore, the *Lear* Court determined that *Sturrus v Dep't of Treasury*, 292 Mich App 639; 809 NW2d 208 (2011),[5] was erroneously interpreted by the plaintiff. *Lear*, 299 Mich App at 537-538. The *Lear* Court rejected the plaintiff's position that *Sturrus* allowed the plaintiff's "amended SBT returns to differ from its federal returns." *Lear*, 299 Mich App at 537-538. The *Lear* Court reasoned that the *Sturrus* "Court held that the SBTA required a plaintiff to use its federal taxable income as a starting point to determine its tax base for its SBT returns. This Court did not hold that a plaintiff could completely disregard its federal tax returns in calculating its tax base." *Lear*, 299 Mich App at 538. The *Lear* Court also stated that, "as plaintiff is undisputedly a C corporation, any discussion regarding the characterization of different tax entities as it relates to this issue is not applicable here." *Id*.

In other words, there was no express provision of the SBTA supporting the plaintiff's actions. In the face of no provision (i.e., legislative silence), the provisions concerning FTI controlled and required the plaintiff to report its FTI—the starting point for its SBT returns—as reflected on its federal tax returns. Those federal tax returns included amortizing the R&E expenditures pursuant to § 59(e) of the IRC. Accordingly, the FTI starting point *had* to include that amortization. There simply was no provision within the SBTA that allowed the plaintiff to essentially go back and retroactively change its SBT returns to suit its present needs. There needed to be an express adjustment within the SBTA, but no such provision was present.

Contrary to plaintiff's contentions, *Lear*'s facts and principles are analogous to the present case. Plaintiff seeks to change its original tax returns in a manner unsupported by the SBTA, MBTA, or CITA. There was no express provision in any of the statutory schemes that supported plaintiff's adjustments to the Property's adjusted basis, just as in *Lear*. Plaintiff's actions ignored the FTI starting point, just as in *Lear*. *Sturrus* does not stand for the legal principle that a plaintiff may ignore its federal tax returns when calculating its FTI; in fact, *Sturrus* itself held that the

---

[5] In the present case, *Sturrus* was a primary part of plaintiff's legal authority in the Court of Claims. It is also relied upon by plaintiff in this appeal.

starting point for determining the tax base for an SBT return was FTI. See *Sturrus*, 292 Mich App at 650. Moreover, the fact that *Sturrus* did not involve a corporation was also notable for the *Lear* Court; indeed, *Sturrus* involved an individual taxpayer and the ITA. See *id*. at 641-642.[6]

We likewise disagree with plaintiff's contentions that the *Lear* Court's statements about the FTI starting point were mere dicta. It is true that "dictum does not constitute binding authority. Dictum is a judicial comment that is not necessary to the decision in the case." *Pew v Mich State Univ*, 307 Mich App 328, 334; 859 NW2d 246 (2014). However, the *Lear* Court's statements about the FTI starting point were not dicta. These were explicitly made as part of its holding that the plaintiff was required to use the amortized amount as its FTI starting point. See *Lear*, 299 Mich App at 537. These were not judicial comments; they were necessary to the decision in the case.

Plaintiff goes to great lengths to argue that the FTI starting point is not an exact number from a taxpayer's federal tax returns but merely a method, but we fail to see how this is dispositive or even relevant. It does not appear that defendant or the Court of Claims have ever stated that the two must *always* match. Indeed, the primary statutory provisions of both the MBTA and CITA provide that FTI is defined as "taxable income as defined in section 63 of the internal revenue code, *except* that federal taxable income shall be calculated as if section 168(k) and section 199 of the internal revenue code were not in effect." MCL 208.1109(3) (emphasis added); MCL 206.607(1) (emphasis added). Accordingly, there are instances where the two will not match. What plaintiff seems to misunderstand is that using the FTI as the starting point for determining income is crucial, and that plaintiff must follow the IRC for calculating this starting point. Plaintiff cannot simply disregard portions of its federal tax returns, like federal depreciation deductions, when calculating its FTI.

Furthermore, for those reasons already discussed, there is no support for plaintiff's apparent position that Michigan law determines FTI. The SBTA, MBTA, and CITA are clear and unequivocal: FTI is determined under the *federal* IRC and applicable provisions. Once that FTI starting point is established, *then* Michigan law applies to adjust and modify FTI according to Michigan law. It is also immaterial what other states have done; what matters is what the Legislature has put forth in the SBTA, MBTA, and CITA. Therefore, plaintiff is not entitled to relief on this issue.

Plaintiff alternatively argues that the tax-benefit rule applied and supported plaintiff's actions. The tax-benefit rule is contained within 26 USC 111(a), and provides: "Gross income does not include income attributable to the recovery during the taxable year of any amount deducted in any prior taxable year to the extent such amount did not reduce the amount of tax imposed by this chapter." As this Court has explained, "the plain language of the tax-benefit rule permits a taxpayer to exclude from gross income any income that is recovered during

---

[6] *Sturrus* is more pertinent to plaintiff's argument about the tax-benefit rule, and it will be examined more fully in that context.

the taxable year that was previously deducted in a prior taxable year as long as that previous deduction did not reduce the taxpayer's tax liability under the IRC." *Sturrus*, 292 Mich App at 650.

*Sturrus* is the only Michigan case that mentions the tax-benefit rule. As previously stated, that case involved whether the plaintiff taxpayer could utilize the tax-benefit rule from the IRC in the context of the ITA. *Sturrus*, 292 Mich App at 641. Although this Court determined that the ITA incorporated the tax-benefit rule, it held that the rule was not applicable to the plaintiff under the circumstances. *Id*. Plaintiff relies on the holding that the ITA incorporated the tax-benefit rule and attempts to analogize it to the MBTA and CITA.

In reaching its conclusion that the tax-benefit rule applied to the ITA, this Court analyzed the ITA and determined that "the ITA expressly incorporates federal principles in calculating taxable income so that terms in the ITA have the same meaning as when used in a comparable context in federal law." *Id*. In reaching this determination, this Court looked to MCL 206.2, as amended by 1967 PA 281. When *Sturrus* was decided,[7] the statute provided, in relevant part:

> (2) Any term used in this act shall have the same meaning as when used in comparable context in the laws of the United States relating to federal income taxes unless a different meaning is clearly required. Any reference in this act to the internal revenue code shall include other provisions of the laws of the United States relating to federal income taxes.

> (3) It is the intention of this act that the income subject to tax be the same as taxable income as defined and applicable to the subject taxpayer in the internal revenue code, except as otherwise provided in this act. [*Sturrus*, 292 Mich App at 648.]

After noting the IRC's definitions for adjusted gross income and taxable income, this Court stated that "[t]he ITA, in turn, defines 'taxable income' as 'adjusted gross income as defined in the internal revenue code' minus certain specified adjustments." *Id*. (citation omitted).

This Court then proceeded to analyze two prior cases, *Preston v Dep't of Treasury*, 190 Mich App 491; 476 NW2d 455 (1991), and *Cook v Dep't of Treasury*, 229 Mich App 653; 583 NW2d 696 (1998) *Cook v Dep't of Treasury*, 229 Mich App 653; 583 NW2d 696 (1998), and how these two cases approached the tax-benefit rule in other contexts. As this Court described, the *Preston* "Court looked to the Legislature's statement of intent in MCL 206.2(3) and concluded that Michigan income tax taxpayers should receive a deduction for a net operating loss (NOL) even though the ITA did not expressly provide for such a deduction." *Sturrus*, 292 Mich App at 649. The *Preston* Court reasoned that, because the IRC defined adjusted gross income to include deductions for NOLs, the ITA must have allowed the same deduction. *Sturrus*, 292 Mich App at 649.

---

[7] The provision was subsequently amended by 2011 PA 38, and the minimal changes (changing "this act" to "this part") appear to be stylistic.

The *Cook* Court "followed the reasoning of *Preston*, but concluded that the taxpayers in that case were not entitled to a deduction." *Sturrus*, 292 Mich App at 649. The issue "was whether oil and gas expenses are deductible even though oil and gas proceeds are exempt from tax under the ITA." *Id*. The *Cook* Court relied on MCL 206.2(3), as did the *Preston* Court, when determining "that a Michigan taxpayer's taxable income [shall] be 'calculated in the same manner as it would be under the federal IRC, in the absence of an express provision of the Michigan ITA requiring a different result.' " *Sturrus*, 292 Mich App at 649 (citation omitted). Therefore, although the IRC allowed for an oil-and-gas-expense deduction, such a deduction "was not proper under the Michigan ITA because the applicable accounting rule in the IRC disallowed deductions for income wholly exempt from taxes imposed by the IRC." *Id*. at 649-650.

From these cases, the *Sturrus* Court concluded that "it is clear that taxable income in Michigan is to be *calculated* using the definitions in the IRC. Indeed, this is precisely what the plain language of MCL 206.2(3) mandates. This is, of course, different than saying taxable income in a Michigan tax return is *identical* to taxable income in a federal tax return." *Sturrus*, 292 Mich App at 650. This Court stated that, "[t]o determine whether the ITA recognizes the federal tax-benefit rule, then, we must turn to the relevant definitions. Regarding taxable income, the ITA directs that we look to the IRC's definition of adjusted gross income." *Id*. This Court found this definition of taxable income under the ITA to be "key because the tax-benefit rule pertains directly to the calculation of gross income." *Id*. From this, the Court then concluded "that since the tax-benefit rule is one part of the calculus in determining a taxpayer's federal adjusted gross income, the ITA's own definition of taxable income necessarily permits plaintiffs to invoke the provisions of the tax-benefit rule if they are applicable to their circumstances." *Id*.

Despite this determination, the *Sturrus* Court held that the tax-benefit rule did not apply to the circumstances of the case. *Id*. at 651. This Court reasoned:

> [P]laintiffs seek to deduct their theft-loss recovery (i.e., the amount of their investment in Pupler recovered in bankruptcy) on their Michigan tax return. *The problem is that the lost investment was not previously deducted on any prior Michigan tax return*. And "in order for an amount to be excluded from gross income [under the tax-benefit rule], it must have previously been claimable as a deduction." [*Id*. (emphasis added; citation omitted; alteration in original).]

This Court concluded that, "by its very terms, the tax-benefit rule does not permit the deduction plaintiffs now seek." *Id*. The *Sturrus* Court provided additional rationale pertinent to the present case:

> Plaintiffs point out that because they previously claimed a theft-loss deduction on their 2002 federal tax return, the tax-benefit rule is applicable in calculating their 2004 Michigan tax liability because they received no Michigan tax benefit for the deduction. This argument, however, ignores that the theft-loss deduction in 2002 was taken *only* in calculating plaintiffs' federal tax return and reducing their 2002 federal tax liability for that year. Indeed, it is because the theft-loss deduction did result in a reduced tax that plaintiffs could not invoke the tax-benefit rule in calculating their 2004 federal tax return. For somewhat similar reasons, because the ITA does not provide for a theft-loss deduction, the tax-benefit

rule does not apply by its very terms. Consequently, plaintiffs' attempt to transpose their 2002 federal theft-loss deduction to their 2004 Michigan tax return is improper because it is not specific figures from a federal tax return but rather the IRC's calculations that the ITA incorporates to determine income subject to tax. [*Id.*]

In other words, although the tax-benefit rule was incorporated into the ITA, it was not available to the plaintiffs because they had taken no deduction on any prior *Michigan* tax return and had received no benefit. It was not enough for the plaintiffs to have taken the deduction on their *federal* tax returns.

Although the ITA is different from the SBTA, MBTA, and CITA, there is some merit to plaintiff's position that the rationale from *Sturrus* can be analogized. As previously discussed, the SBTA, MBTA, and CITA have all provided that the starting point was FTI, which in turn was determined under § 63 of the IRC. Just like the *Sturrus* Court recognized for the ITA, the SBTA, MBTA, and CITA each rely on a federal definition of taxable income that includes gross income, see 26 USC 63(a), and gross income includes the tax-benefit rule because it is part of the chapter discussed in the federal definition of taxable income, see 26 USC 111(a). Although the definition in the ITA may be worded slightly differently, and although the SBTA, MBTA, and CITA lack the "intent" provision of MCL 206.2(3) provided in the ITA, one could argue that this may be a distinction without a difference. The SBTA, MBTA, and CITA plainly require FTI to be calculated using gross income, and gross income necessarily includes the tax-benefit rule.

The Court of Claims stated that plaintiff cited no provision of the CITA or any caselaw to support its position. Indeed, plaintiff provided a mere footnote with no authority Now, on appeal, plaintiff has rectified this and provided persuasive authority and analysis. Defendant maintains that plaintiff cites no authority, but this is not necessarily true. Plaintiff cites the statutory provisions themselves and analogizes *Sturrus*. "[S]o long as the issue itself is not novel, a party is generally free to make a more sophisticated or fully developed argument on appeal than was made in the trial court." *Glasker-Davis v Auvenshine*, 333 Mich App 222, 228; 964 NW2d 809 (2020). A taxpayer must calculate its ITA income in the same way it would under the IRC unless an express provision of the ITA provided otherwise, *Sturrus*, 292 Mich App at 649. This appears to be the same for the SBTA, MBTA, and CITA.

On the other hand, although the tax-benefit rule may be used when calculating gross income, one must remember that, under the SBTA, MBTA, and CITA, this is done in the context of the FTI *starting point*. One could argue that, for plaintiff's position to be correct, the tax-benefit rule would need to be an adjustment made *after* FTI was calculated. Plaintiff calls attention to no such adjustment in these statutes. Furthermore, one could argue that plaintiff could not have invoked the rule even on its federal tax returns because the rule only applies when the prior deduction does not result in a reduction to the tax imposed. See 26 USC 111(a). However, the federal depreciation deduction presumably *did* reduce the tax imposed. Even at the federal level, it seems dubious for this rule to have applied to plaintiff, let alone for it to apply at the state level.[8] Finally, as previously discussed, the *Lear* Court was doubtful of applying principles from a case

_____

[8] It is unclear from the record whether plaintiff received the benefit of this rule on its federal tax returns.

involving the ITA to a case involving businesses and corporations. See *Lear*, 299 Mich App at 538.

Regardless, even assuming the tax-benefit rule applies to the SBTA, MBTA, or CITA, the rule is inapplicable in the instant matter. There is no dispute from plaintiff that, during the SBTA years, it did *not* take any depreciation deductions on its SBT returns because the SBTA prohibited this. Plaintiff took depreciation deductions in its federal return, which meant that these deductions were included in plaintiff's FTI starting point. However, the SBTA expressly required plaintiff to add back these deductions. MCL 208.9(4)(c). Therefore, plaintiff did *not* deduct any of the federal depreciation on its SBT returns.

Additionally, the rule's "plain language . . . permits a taxpayer to exclude from gross income any income *that is recovered* during the taxable year that was *previously deducted* in a prior taxable year as long as that previous deduction *did not reduce* the taxpayer's tax liability under the IRC." *Sturrus*, 292 Mich App at 650 (emphasis added). There is simply no support from the record that plaintiff recovered any income in a taxable year that was *previously deducted*. By plaintiff's admissions and the plain language of the SBTA, plaintiff was *prohibited* from taking any deductions on its SBT returns because it had to add back the federal depreciation deductions. See *Sturrus*, 292 Mich App at 651 ("The problem is that the lost investment was not previously deducted on any prior Michigan tax return."). This Court expressly rejected the argument that, because there was no Michigan benefit, the rule applied. See *id*. This Court once again returned to the fact that no state deduction had been taken. See *id*. ("For somewhat similar reasons, because the ITA does not provide for a theft-loss deduction, the tax-benefit rule does not apply by its very terms.").

Plaintiff also briefly contends that applying the tax-benefit rule avoids double taxation. According to plaintiff, if the rule is not applied, plaintiff will have been taxed once on the depreciation deductions taken during the SBTA years and taxed a second time during the CITA years on those same deductions. However, there was no double taxation. The only taxation occurred when plaintiff sold the Property and realized gains on it. Plaintiff cites no authority to support the implied assertion that prohibiting a federal deduction constitutes state taxation, and when "a party fails to cite any supporting legal authority for its position, the issue is deemed abandoned." *Bill & Dena Brown Trust*, 312 Mich App at 695 (quotation marks and citation omitted). In fact, "[a] 'tax deduction' is [merely] a 'subtraction from gross income in arriving at taxable income,' " and, as defendant points out, "a deduction presents a matter of legislative grace . . . ." *Menard Inc v Dep't of Treasury*, 302 Mich App 467, 473; 838 NW2d 736 (2013) (citation omitted). Plaintiff has failed to demonstrate entitlement to relief on this issue.

C. PENALTY WAIVER

Plaintiff also argues that it was entitled to a penalty waiver in this matter. We disagree.

MCL 205.24(1) provides that, "[i]f a taxpayer fails or refuses to file a return or pay a tax administered under this act within the time specified, the department, as soon as possible, shall assess the tax against the taxpayer and notify the taxpayer of the amount of the tax." Additionally, defendant is statutorily required to assess a penalty when a taxpayer fails or refuses to pay a tax within the allotted time. See MCL 205.24(2). However, "[i]f a return is filed or remittance is paid

-14-

after the time specified and it is shown to the satisfaction of the department that *the failure was due to reasonable cause and not to willful neglect*, the state treasurer or an authorized representative of the state treasurer *shall waive the penalty* prescribed by subsection (2)." MCL 205.24(3) (emphasis added).

Mich Admin Code, R 205.1013 sets forth the requirements to request such a penalty waiver:

> (2) If a return is filed or a remittance is paid after the time specified, the taxpayer may request that the commissioner of revenue waive and the commissioner shall waive, the penalty authorized by [MCL 205.24(4)] if the taxpayer establishes that the failure to file the return or to pay the tax was due to reasonable cause and not to willful neglect.
>
> (3) A waiver of penalty request *shall be in writing and shall state the reasons* alleged to constitute reasonable cause and the absence of willful neglect.
>
> (4) *The taxpayer bears the burden* of affirmatively establishing, *by clear and convincing evidence*, that the failure to file or failure to pay was due to reasonable cause. [Emphasis added.]

There is a nonexhaustive list of six ways in which a taxpayer generally can show reasonable cause. See Mich Admin Code, R 205.1013(7)(a) to (f). However, plaintiff does not argue that any of these are applicable.

There is also a nonexhaustive list of eight ways that, standing on their own, do *not* constitute reasonable cause. Mich Admin Code, R 205.1013(8)(a) to (h). Relevant to this appeal are three factors:

> (a) The compliance history of the taxpayer.
>
> (b) The nature of the tax.
>
> \* \* \*
>
> (d) The taxpayer was incorrectly advised by a tax advisor who is competent in Michigan state tax matters after furnishing the advisor with all necessary and relevant information and the taxpayer acted reasonably in not securing further advice.

Nonetheless, "these factors may be considered with other facts and circumstances and may constitute reasonable cause." Mich Admin Code, R 205.1013(8). Plaintiff does not appear to explicitly argue that any of these factors are applicable.

In this case, plaintiff failed to satisfy the writing requirement. The only writing that plaintiff refers to is its request for the informal conference. However, this was insufficient. Plaintiff's request was in the form of a letter in which it expressed disagreement with defendant's adjustments regarding the Property and depreciation. Although plaintiff put forth a detailed

-15-

explanation of this disagreement, there was no request for a penalty waiver, nor did plaintiff state the reasons that its actions constituted reasonable cause and without willful neglect. Rule 205.1013(3) plainly requires that "[a] waiver of penalty request *shall be in writing* and *shall state the reasons alleged to constitute reasonable cause and the absence of willful neglect*." (Emphasis added.) Plaintiff indisputably failed to do so. Plaintiff argues that it was enough to simply express disagreement with defendant's assessment, but this goes against the plain language of the rule. If plaintiff's position were correct, *every* taxpayer would satisfy the penalty waiver requirements by simply disagreeing with a defendant's actions, which necessarily would happen when requesting an informal conference. Plaintiff provides no authority to support its position.

Even assuming that plaintiff satisfied the writing requirement, we see little merit to plaintiff's position that it provided reasonable cause and no willful neglect, largely because plaintiff's positions are not supported by evidence from the record. "An appellant may not merely announce his or her position and leave it to this Court to discover and rationalize the basis for his or her claims." *Bill & Dena Brown Trust v Garcia*, 312 Mich App 684, 695; 880 NW2d 269 (2015) (quotation marks and citation omitted). See also *Walters v Nadell*, 481 Mich 377, 388; 751 NW2d 431 (2008) ("Trial courts are not the research assistants of the litigants; the parties have a duty to fully present their legal arguments to the court for its resolution of their dispute."). Plaintiff raises four reasons that reasonable cause was met: a history of timely tax returns, defendant's policy of granting waivers for first-time penalties, a complex issue of first impression, and incorrect advice from a tax advisor.

Plaintiff argues that it has timely filed its tax returns, including those at issue in this case, but it cites no evidence from the record. Regardless, as defendant points out, this case does not concern untimely tax returns. However, plaintiff's position may be an attempt to refer to Rule 205.1013(7)(a) (compliance history). Plaintiff contends that defendant has had a longstanding policy of waiving penalties the first time a penalty is assessed, but plaintiff provides no support for this assertion. Regardless, nothing in the statute or administrative rules evidences such a policy. To the extent any policy exists, it appears to be one of grace by defendant that is not required. Plaintiff provides no authority otherwise.

Plaintiff next argues that this case presents a complex issue of first impression. We agree that there appears to be no caselaw explicitly addressing the tax issues raised in this case. Indeed, even the Court of Claims was sympathetic on the basis that defendant has not provided guidance. This argument appears to refer to Rule 205.1013(7)(b) (the *nature* of the tax), and it seems that this would include the *complex nature* of the tax. Plaintiff contends without record support that it relied on its tax advisor for guidance. However, if this were true, it would relate to Rule 205.1013(7)(d) (incorrectly advised by tax advisor), which weighs in plaintiff's favor. Therefore, not many of plaintiff's four reasons are persuasive and none would rise to the level of clear and convincing evidence.

Plaintiff also asserts that "[t]he Court of Appeals has held that there must be 'an element of intent' or 'fault' before penalties may be imposed for the failure to collect tax." Plaintiff cites *Mich Bell Tel Co v Dep't of Treasury*, 229 Mich App 200, 216; 581 NW2d 770 (1998), but this provides no support, as *Mich Bell Tel Co* does not discuss penalty waivers. See *id*. at 216-217.

Plaintiff lastly argues that the Court of Claims made an error of law by requiring it to put forth specific examples from the two lists in Rule 205.1013. However, a fair reading of the Court of Claims' decision shows that plaintiff's position is incorrect. Rather, the Court of Claims determined that plaintiff failed to put forth any examples of reasonable cause *besides* that of an honest difference of opinion, and the court ultimately determined that there was no legal basis for plaintiff's supposed honest difference of opinion. The court clearly laid out the correct legal principles and stated that the examples listed in Rule 205.1013 "may" be considered. For the foregoing reasons, plaintiff is not entitled to a penalty waiver.

Affirmed.

/s/ Michelle M. Rick
/s/ Allie Greenleaf Maldonado
/s/ Michael J. Kelly